**M–Z ENTERPRISES, INC., d/b/a M. Z. Davis Crane Service, a/k/a M. Z. Davis Crane Service, Appellee,**

v.

**HAWKEYE–SECURITY INSURANCE COMPANY, Appellant.**

No. 65375.

Supreme Court of Iowa.

April 21, 1982.

J. W. Conway of Allbee, Wilson, Conway & Allison, and Mark R. Gillett of Gillett & Gillett, Muscatine, for appellant.

Craig D. Warner of Pryor, Riley, Jones & Aspelmeier, Burlington, for appellee.

REYNOLDSON, Chief Justice.

April 24, 1978, plaintiff, M–Z Enterprises, Inc. (M–Z), was using a crane to lift a dredge from the Mississippi River when the crane tipped over and was substantially damaged. Defendant, Hawkeye-Security Insurance Company (Hawkeye), had sold a Scheduled Property Floater Policy that covered the crane. Hawkeye eventually denied M–Z's claim, and this lawsuit ensued.

The petition filed in district court contained two claims, pleaded in separate divisions. Division I was a contract action based on the insurance policy. Division II was an action based on the tort of bad faith failure to pay insurance benefits. Plaintiff asked for both compensatory and punitive tort damages. Following trial, and in conformance with the jury's verdicts, trial court entered judgment for M–Z in the amounts of $27,618.84 on the contract, $1600 compensatory tort damages, and $30,-000 punitive tort damages. Hawkeye appeals. We reverse and remand for further proceedings consistent with this opinion.

I. Plaintiff's petition originally was filed under the name of M. Z. Davis Crane Service, Inc. However, during trial the parties discovered that the crane's owner and real party in interest was M–Z Enterprises, Inc. M. Z. Davis Crane Service, Inc., was not an Iowa corporation or a registered assumed name of an Iowa corporation. *See generally* § 496A.7(4)-(5), The Code. We infer from the record before us the latter name was picked up by plaintiff's counsel from Hawkeye's policy, and so appeared on the policy through a clerical error of Hawkeye's agent. Trial testimony indicated M. Z. Davis Crane Service was a business name that M. Z. Davis had used for many years, but it was not the official name of Mr. Davis' construction corporation.

Plaintiff successfully moved for leave to amend to substitute M–Z as plaintiff. *See* Iowa R.Civ.P. 88. Hawkeye challenges trial court's ruling because the amendment was filed a year after the accident and the insurance policy contained a one-year time limitation for bringing action. Hawkeye argues: (1) the amendment substituting the real corporation for the fictitious corporation did not relate back to the date of the original filing and, therefore, the case was barred by the contractual time limitation; and (2) the case was not brought by the real party in interest and our rules of civil procedure do not allow amendments to cure this defect.

■ The petition contained the allegation that plaintiff was a corporation organized under Iowa law. Hawkeye's answer denied this statement for lack of knowledge. Of course this denial was not sufficient to place plaintiff's capacity to sue squarely in issue before the court. *See Burr v. Apex Concrete Co.*, 242 N.W.2d 272, 274–75 (Iowa 1976); *Winterset Savings Bank v. Iiams*, 211 Iowa 1226, 1227, 233 N.W. 749, 749 (1930); Iowa R.Civ.P. 98.

We must determine whether trial court erred in granting leave to amend under rule 88 and, if not, whether the amendment

related back to the date of filing of the petition under rule 89. These rules are derived from rule 15 of the federal rules of civil procedure. *See* 2 Iowa R.Civ.P.Ann. 88, 89 advisory committee comments (West Supp. 1981–82).

■ We have not announced a standard of review for rule 88 since it was amended in 1976. However, there is no reason to change our former standard. In *Atlantic Veneer Corp. v. Sears*, 232 N.W.2d 499, 503 (Iowa 1975), we said:

> Allowance of an amendment to a pleading is the rule and denial the exception, although an amendment is not permissible which will substantially change the issue. Additionally, a trial court has considerable discretion as to whether an appropriate request for leave to amend should be granted or denied and we will reverse only where a clear abuse of discretion is shown.

Similar standards are applied under federal rule 15(a). *Beeck v. Aquaslide 'N' Dive Corp.*, 562 F.2d 537, 539–40 (8th Cir. 1977).

The issues in this case were not changed by the amendment. Hawkeye advances no reasons why allowance of this amendment was a clear abuse of discretion, and we find none.

Iowa Rule of Civil Procedure 89 ("Making and construing amendments") in part states:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the ac-

tion would have been brought against him.

This language is identical to the first paragraph of federal rule 15(c).

On its face rule 89 appears to involve only the situation of changing defendants. However, federal rule 15(c) is also applicable when plaintiffs are changed. The rule 15 advisory committee note is instructive.

> The relation back of amendments changing plaintiffs is not expressly treated in revised Rule 15(c) since the problem is generally easier. Again the chief consideration of policy is that of the statute of limitations, and the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs.

Fed.R.Civ.P. 15 advisory committee note, 39 F.R.D. 69, 83–84 (1966).

■ The threshold requirement for relation back under rule 89 is that the claim pleaded in the amendment arose from the conduct, transaction, or occurrence described in the original pleading. If the amendment is made to substitute plaintiffs and the correct defendant is already in the case, the rule also requires that within the period of the statute of limitations the defendant had received sufficient notice of the action to avoid prejudice in maintaining a defense. Courts have applied three tests to determine if the latter requirement is met: (1) whether defendant received adequate notice before the statute ran, (2) whether defendant would be prejudiced by the amendment, and (3) whether the original and new plaintiffs have an "identity of interest." *See* 3 J. Moore, *Moore's Federal Practice* ¶ 15.15 [4.—2], at 15–231 to –233 (2d ed. 1980); 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1501 (1971); Annot., 12 A.L.R.Fed. 233, 239, 250–54 (1972). Notice and prejudice to the defendant are the key inquiries.

> Paraphrased in terms of substitution of plaintiffs, the test is whether the defendants had fair notice of the action and whether the substitution of plaintiffs will alter the claim to the prejudice of the defendants.

*Unilever (Raw Materials) Ltd. v. M/T Stolt Boel*, 77 F.R.D. 384, 390 (S.D.N.Y.1977); *see Paskuly v. Marshall Field & Co.*, 494 F.Supp. 687, 688 (N.D.Ill.1980), *aff'd*, 646 F.2d 1210 (7th Cir. 1981).

There is nothing in this record to demonstrate Hawkeye was prejudiced when this amendment was allowed to relate back. Its sales agent had accepted premiums from the nonexistent corporation. It was notified promptly of the accident, and within one day Hawkeye's claims representative and "loss control representative" were both aware of the claim underlying this lawsuit. We hold trial court did not abuse its discretion in allowing this amendment to relate back.

Hawkeye points out the federal real party in interest rule, Federal Rule of Civil Procedure 17(a), contains language that authorizes amendments and the Iowa rule, Iowa Rule of Civil Procedure 2, does not. We find no merit in its argument that this language difference is significant. First, Iowa Rule of Civil Procedure 2 was not derived from federal rule 17(a). Both rules spring from the New York Field Code rule. *See* F. James & G. Hazard, *Civil Procedure* § 9.2, at 394–95 (2d ed. 1977). Second, even though rule 2 does not explicitly authorize amendments to substitute as plaintiff the real party in interest, such amendments have long been condoned in Iowa. *Richardson v. Clark Bros.*, 202 Iowa 1371, 1373, 212 N.W. 133, 134 (1927); *Norton v. Ferguson*, 203 Iowa 317, 318, 211 N.W. 417, 418 (1926). Although when first promulgated in 1943 Iowa Rule of Civil Procedure 88 deleted language contained in comparable section 11182, The Code 1939, relating to amendments to correct mistakes in the names of parties, this court held the rule should have substantially the same interpretation. *See Terpstra v. Schinkel*, 235 Iowa 547, 551–52, 17 N.W.2d 106, 109 (1945); 2 Iowa R.Civ.P. Ann. 88 advisory committee comment, at 22 (West 1970) ("The prior decisions regarding amendments are still effective."). The 1976 amendment of rule 88 did not alter its relationship to rule 2.

II. M–Z's proof on division I was designed to show a sudden gust of wind upset the crane. Hawkeye affirmatively pleaded a policy exclusion relating to excessive loads, and it introduced proof the crane mishap was caused by a lift that exceeded the crane's capacity.

The insurance policy contained the following exclusionary clause:

THIS POLICY DOES NOT INSURE AGAINST: 1. Loss or damage occasioned by the weight of a load exceeding the *registered* lifting or supporting capacity of any machine.

(Emphasis added.) Displayed inside the cab of the damaged crane was a chart labeled "Rated Lifting Capacities in Pounds." Defendant maintained "registered" meant "rated" in the exclusionary clause, the weight of the dredge exceeded the lifting capacity of the crane as determined by the chart, and therefore this accident was not covered by the policy. As error Hawkeye asserts trial court should have instructed the jury that as a matter of law "registered" meant "rated."

Trial court, instructing the jury on Hawkeye's exclusion theory, put the burden on Hawkeye to show by a preponderance of the evidence that M–Z's loss was caused by the weight of a load that exceeded the registered lifting or supporting capacity of the machine. Interpretation of the exclusionary clause language was assigned to the jury as a fact question, with ambiguities to be resolved against Hawkeye.

Determining the meaning of "registered lifting or supporting capacity" is a problem of contract interpretation. Contract interpretation is an issue for the court unless extrinsic evidence must be used to determine the meaning of the contract language. *Connie's Construction Co. v. Fireman's Fund Insurance Co.*, 227 N.W.2d 207, 210 (Iowa 1975); Restatement (Second) of Contracts § 212(2) (1979). Extrinsic evidence is admissible as an interpretation aid if it throws light on the situation of the parties, antecedent negotiations, the attendant circumstances, and the parties' objects. *Fashion Fabrics of Iowa, Inc. v. Retail Investors Corp.*, 266 N.W.2d 22, 25 (Iowa 1978).

The following extrinsic evidence concerning the term "registered" was admitted without objection. M. Z. Davis testified he did not know what "registered" meant, but could not offer any other meaning than "rated." He also testified he knew the exclusionary clause was in the policy. The crane operator, M. Z. Davis' son; the crane salesman; M–Z's expert engineer; and both defense expert witnesses testified they did not know what "registered" meant in this context. None of them offered a suggestion.

■ "Registered" and "rated" are not synonymous. See *Webster's Third New International Dictionary* 1884, 1912 (unabr. 1976); *compare United Rental Equipment Co. v. Aetna Life & Casualty Insurance Co.*, 74 N.J. 92, 95, 376 A.2d 1183, 1185 (1977) (appellate court assumed terms were equivalent because parties did not contend they had different meanings) *with M–C Industries, Inc. v. Federal Insurance Co.*, 562 S.W.2d 30, 31 (Tex.Civ.App.1978) (same exclusionary clause held to be ambiguous in a crane case). Therefore, resort to extrinsic evidence to determine the situations, circumstances, and objects of the parties was permissible.

■ Further, an insurance company has the duty to define exclusionary terms in clear, precise language. *Zenti v. Home Insurance Co.*, 262 N.W.2d 588, 590 (Iowa 1978); *Benzer v. Iowa Mutual Tornado Insurance Association*, 216 N.W.2d 385, 388 (Iowa 1974); *see Edwards v. State Farm Mutual Automobile Insurance Co.*, 296 N.W.2d 804, 806–07 (Iowa 1980). Defendant cannot now complain of resort to extrinsic evidence. Because extrinsic evidence was admitted to determine the meaning of the words in the contract, trial court did not err in submitting this issue to the jury.

■ III. Defendant claims trial court erred because it refused to instruct the jury on section 622.22, The Code. Section 622.22 states:

When the terms of an agreement have been intended in a different sense by the parties to it, that sense is to prevail against either party in which he had reason to suppose the other understood it.

This section applies only if the terms of the contract are ambiguous. *Brecht v. Cedar Rapids Development Co.*, 257 Iowa 1117, 1124, 136 N.W.2d 287, 291 (1965).

Although we recently defined "ambiguity" as requiring two or more proposed meanings of the contract language, *Farm Bureau Mutual Insurance Co. v. Sandbulte*, 302 N.W.2d 104, 108 (Iowa 1981), we also have defined "ambiguous" to mean "of doubtful nature or meaning," "uncertain," and "equivocal." *McCarthy v. McCarthy*, 162 N.W.2d 444, 448 (Iowa 1968); *see also Webster's Third New International Dictionary* 66 (unabr. 1976) ("ambiguity" means looseness of signification or reference). Therefore, we hold that even though there was only one suggested definition of "registered lifting or supporting capacity," the contract is ambiguous because the witnesses testified they did not know what the clause meant, and Hawkeye's suggested definition is not unequivocal.

■ To foundation a section 622.22 instruction Hawkeye was required to show M–Z knew or had reason to know of Hawkeye's intention to define "registered" as "rated" when the contract was made. § 622.22, The Code; *see Fashion Fabrics*, 266 N.W.2d at 27; *see generally Iowa-Des Moines National Bank v. Insurance Co. of North America*, 459 F.2d 650, 654–55 (8th Cir. 1972); Restatement (Second) of Contracts § 201(2) (1979).

The insurer's duty to define exclusionary terms precisely requires a substantial showing that M–Z knew Hawkeye's intentions. There is no evidence in this regard. Therefore, trial court did not err in refusing to submit a section 622.22 instruction.

IV. Trial court excluded a defense witness, Dennis Eckstein, because his name was not provided in answer to an M–Z interrogatory requesting names of expert witnesses. Hawkeye contends this was error.

Eckstein was an engineer employed by the manufacturer of the damaged crane. He was called to testify about at least two matters. First, he was going to be used to establish a business records exception to the hearsay rule for the capacity chart in the crane's cab.[1] Second, according to Hawkeye's brief, Eckstein "was also going to explain the nature of the tests which Grove [the manufacturer] performed in order to determine the capacity of their cranes."

Whether a subject of testimony is for an expert should be determined by the following test.

Whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier. "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." Ladd, Expert Testimony, 5 Vand.L.Rev. 414, 418 (1952).

Fed.R.Evid. 702 advisory committee note, 56 F.R.D. 183, 282 (1972); see, e.g., State v. Galloway, 275 N.W.2d 736, 741 (Iowa 1979) (Reynoldson, C. J., concurring specially); Smith v. Cedar Rapids Country Club, 255 Iowa 1199, 1210, 124 N.W.2d 557, 564 (1963); Grismore v. Consolidated Products Co., 232 Iowa 328, 342, 5 N.W.2d 646, 654 (1942). We cannot say, as a matter of law, that Eckstein was not an expert witness.

The parties argue this issue as involving Iowa Rule of Civil Procedure 134 sanctions. Because no court order requiring interrogatory answers was entered and Hawkeye did serve answers to the interrogatories, rule 134 does not apply. See Iowa R.Civ.P. 134(b), (d). However, rule 125(a)(2) requires a party to seasonably supplement discovery responses with the identity, subject matter, and substance of the testimony of any expert it thereafter expects to call as a witness. Hawkeye did not do this. Sanctions for violating this duty are implicit in rule 125 and are not grounded on rule 134 unless its provisions are violated. See White v. Citizens National Bank of Boone, 262 N.W.2d 812, 816 (Iowa 1978); C. Wright & A. Miller, Federal Practice and Procedure § 2050 (1970). Sanctions under rule 125 may include exclusion of evidence, continuance, or other actions that a trial court deems appropriate. E.g., White, 262 N.W.2d at 816–17 (testimony of expert limited); see Suckow v. Boone State Bank & Trust Co., 314 N.W.2d 421, 425 (Iowa 1982) (rule 134(b)(2)); Fed.R.Civ.P. 26(e) advisory committee note, 48 F.R.D. 459, 508 (1970).

In reviewing rule 125 sanction issues we apply the abuse of discretion test. White, 262 N.W.2d at 816; see Suckow, 314 N.W.2d at 425 (discovery rules in general); Haumersen v. Ford Motor Co., 257 N.W.2d 7, 13–14 (Iowa 1977) (rule 134). We hesitate to interfere with the exercise of this discretion, Suckow, 314 N.W.2d at 425, and decline to do so in these circumstances.

V. The second division of M–Z's petition pleaded a cause of action in tort for bad faith failure to pay insurance benefits. We have not recognized this tort in Iowa, although we have recognized a cause of action against an insurance carrier for "bad faith" in its representation of an insured against a third-party claim. Kooyman v. Farm Bureau Mutual Insurance Co., 315 N.W.2d 30, 33–34 (Iowa 1982). We also have recognized that the conduct of an insurer relating to its insured's claim may result in the tort of intentional infliction of severe emotional distress. Amsden v. Grinnell Mutual Reinsurance Co., 203 N.W.2d 252, 253–55 (Iowa 1972).

The majority of jurisdictions considering the issue have recognized a tort based on an insurance company's bad faith conduct relating to a first-party claim. See, e.g., Noble v. National American Life Insurance

---

1. This chart later was used by an expert witness for the defense despite plaintiff's hearsay objection. Therefore, we will not consider the issue whether Eckstein should have been allowed to testify only as a business record foundation.

*Co.,* 128 Ariz. 188, 189, 624 P.2d 866, 867 (1981); *Gruenberg v. Aetna Insurance Co.,* 9 Cal.3d 566, 510 P.2d 1032, 108 Cal.Rptr. 480 (1973). Other jurisdictions have rejected such claims. *See, e.g., Spencer v. Aetna Life & Casualty Insurance Co.,* 227 Kan. 914, 611 P.2d 149 (1980); *Haagenson v. National Farmers Union Property & Casualty Co.,* 277 N.W.2d 648 (Minn.1979). Decisions from the various jurisdictions, adopting and rejecting the tort, are collected in *Spencer,* together with the arguments and policy reasons for each position. *Spencer,* 227 Kan. at 917–20, 611 P.2d at 151–53.

The facts in this case do not require us to adopt or reject the tort of bad faith in the first-party situations. The decisions recognizing the tort generally hold that plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the insurer's knowledge or reckless disregard of the lack of reasonable basis for denying the claim. *See, e.g., Anderson v. Continental Insurance Co.,* 85 Wis.2d 675, 691–92, 271 N.W.2d 368, 376 (1978). When a claim is "fairly debatable," the insurer is entitled to debate it, whether the debate concerns a matter of fact or law. *Id.* at 691–93, 271 N.W.2d at 376–77. In this litigation Hawkeye's excess weight defense and supporting evidence clearly made M–Z's claim "fairly debatable," as trial court must have determined when it submitted the issue to the jury. This being so, there was no bad faith issue in the case, and, as a matter of law, that claim should not have been submitted to the jury.

The jury responded to the division II (bad faith) issues with a verdict for $1600 actual damages and $30,000 exemplary damages. We infer from the evidence and instructions that the actual damage verdict was for M–Z's services in uprighting the crane ($1200) and in weighing the dredge on portable scales ($400), both at defendant's request. Prior to trial Hawkeye offered to confess judgment for the total, $1600. A Hawkeye employee testified without contradiction the company had never received a bill for these services. Although M–Z may have secured payment for these services by claiming in a separate division on oral contract, it elected to present these claims as "bad faith" evidence in a tort claim. Because we hold that cause of action should not have been submitted to the jury, we reverse the judgment as to the $1600 actual damages and $30,000 exemplary damages awarded by the jury, and remand to trial court for entry of judgment for Hawkeye on these division II claims.

█ VI. There remains the division I claim based on the insurance contract. As we noted in division I hereof, in the course of trial it developed the action had not been brought in the proper corporate name. Attached to the motion to amend the petition to substitute the proper name was the affidavit of M. Z. Davis, principal stockholder and president, stating that M–Z Enterprises, Inc., owned the insured crane. A department of transportation registration showing this fact was attached as an exhibit.

In support of the motion and in absence of the jury, M–Z presented evidence from Hawkeye's general agent and his employee to show their responsibility for the error in the corporate insured's name on the insurance policy. The in-chambers testimony of M. Z. Davis on the same point incidentially included the fact that M–Z owned the crane. After the motion to amend was granted no evidence was presented before the jury to show M–Z owned the crane. This was raised as an issue by Hawkeye's motion for directed verdict, and in a colloquy relating to the jury arguments.

Apparently M–Z and trial court believed the issue had been resolved when the motion to amend was sustained. At one point, in response to Hawkeye's arguments, trial court observed, "Well, but, as the petition has been amended, the plaintiff is the owner of the crane." M–Z might understandably have concluded trial court was holding M–Z the owner as a matter of law. But trial court did not instruct the jury, as a matter of law, that M–Z owned the crane. Rather, it submitted the stock instruction it was M–Z's burden to establish by a preponderance of the evidence, "[t]hat on April 24,

1978, there was in effect an insurance policy issued by the defendant insuring the plaintiff's crane."

Trial court should have granted Hawkeye's motion for directed verdict. The judgment for $27,618.84 on the division I contract claim must be reversed. This holding, however, does not end our inquiry. Iowa Rule of Appellate Procedure 26 ("Remands") provides in relevant part:

When a judgment is reversed for error in overruling a motion to direct a verdict ... and the granting of the motion would have terminated the case in favor of appellant, the appellate court may enter or direct the trial court to enter final judgment as if such motion had been initially sustained; provided that if it appears from the record that the material facts relating thereto were not fully developed at the trial or if in the opinion of the appellate court the ends of justice will be served thereby, a new trial shall be awarded of such issue or the whole case.

Iowa Rule of Appellate Procedure 26 was former Iowa Rule of Civil Procedure 349.

This court detailed the history of our practice and the rationale behind Iowa Rule of Civil Procedure 349 in *Olson v. Hodges*, 236 Iowa 612, 627–28, 19 N.W.2d 676, 684 (1945):

It has been the uniform rule of this court that a general order of reversal in a law case cancels the district court judgment and sends the case back for a full retrial of the entire case, even though the reversing opinion was based upon the insufficiency of plaintiff's evidence. [Citations omitted.] If on retrial no new evidence was offered or the record was not materially different than upon the first trial the finding of this court upon that evidence would be conclusive against the plaintiff ....

But rule 349 of the new rules provides that when a judgment is reversed for overruling a motion to direct a verdict, and the granting of the motion would have terminated the case in favor of the appellant, this court may enter, or direct

the trial court to enter final judgment as if the motion had been initially sustained; providing that, if it appears from the record that the material facts relating thereto were not fully developed at the trial, or if, in the opinion of this court, the ends of justice will be served thereby, a new trial shall be awarded of such issue or of the whole case.

See *Citizens Savings Bank v. Sac City State Bank*, 315 N.W.2d 20, 30 (Iowa 1982); *Schneider v. Parish*, 242 Iowa 1147, 1155–56, 49 N.W.2d 535, 540 (1951); *Kinney v. Larsen*, 239 Iowa 494, 500, 31 N.W.2d 635, 638 (1948).

We hold that in the unique circumstances of this case Iowa Rule of Appellate Procedure 26 is applicable. A relevant fact—ownership of the crane—was not developed in the evidence before the jury. Beyond that, we believe the ends of justice will be served by a remand for trial on the single issue of ownership of the crane. If a fact finder finds M–Z owned the insured crane, trial court shall reinstate its judgment on division I. If the fact finder finds M–Z did not own the crane when it was damaged, trial court shall enter judgment for Hawkeye on the division I policy claim.

■ We add the caveat that we shall apply Iowa Rule of Appellate Procedure 26 in this fashion only in the most unusual situations. It should not be relied on as a substitute for careful trial preparation and presentation of evidence.

We reverse and remand for further proceedings pursuant to this decision. Costs are taxed one-half to the appellant and one-half to the appellee.

REVERSED AND REMANDED WITH DIRECTIONS.

All Justices concur except ALLBEE, J., who takes no part.