**Robert L. DOLAN Appellee,**

v.

**AID INSURANCE COMPANY, n/k/a
Allied Insurance Group, Appellant.**

No. 87–1380.

Supreme Court of Iowa.

Nov. 23, 1988.

Rehearing Denied Dec. 16, 1988.

John J. Carlin of Carlin, Hellstrom &
Bittner, Davenport, for appellant.

Alfred E. Hughes of Hughes & Trannel,
Dubuque, for appellee.

William E. Timmons and Douglas A.
Haag of Patterson, Lorentzen, Duffield,
Timmons, Irish, Becker & Ordway, Des
Moines, for amicus curiae Iowa Ins. Institute.

SNELL, Justice.

This appeal raises an issue which
has recurrently been before this court:
whether we will recognize a cause of action
in tort against an insurance carrier for bad
faith conduct relating to a claim made by
its insured. Although we have recognized
a cause of action against an insurer for bad
faith in its representation of an insured
against a third-party claim, *Kooyman v.
Farm Bureau Mut. Ins. Co.*, 315 N.W.2d
30, 33–34 (Iowa 1982), we have consistently
found it unnecessary to adopt or reject the
tort of bad faith in the first-party situations. *Hoekstra v. Farm Bureau Mut.
Ins. Co.*, 382 N.W.2d 100, 112 (Iowa 1986);
*Pirkl v. Northwestern Mut. Ins. Ass'n*, 348
N.W.2d 633, 636 (Iowa 1984); *Higgins v.
Blue Cross*, 319 N.W.2d 232, 236 (Iowa
1982); *M–Z Enterprises v. Hawkeye–Security Ins. Co.*, 318 N.W.2d 408, 415 (Iowa
1982). For the reasons discussed below,
we now recognize first-party as well as
third-party bad faith claims.

I

On September 24, 1984, the plaintiff,
Robert Dolan, was involved in an automobile accident in Dubuque, Iowa with Bob

Schroeder. On June 11, 1985, Dolan notified his insurer, Aid Insurance Company, n/k/a Allied Insurance Group (Allied), that Schroeder's liability policy limits would be insufficient to fully cover his damages. Dolan's policy with Allied provided underinsured motorist coverage, with a policy limit of $40,000. Dolan and Allied then corresponded concerning Dolan's medical bills and records, and his attempts to negotiate a settlement with Schroeder's insurer. On January 6, 1986, Allied waived its subrogation rights, and requested Dolan's therapy notes and information regarding whether Dolan had any preexisting injuries. Dolan later settled with Schroeder's insurer for Schroeder's policy limit of $25,000. On January 28, 1986, Dolan informed Allied that previous soft-tissue injuries he had incurred had healed by the time of his accident with Schroeder and that no residual disability existed when the accident occurred. Dolan also requested, for the second time, that Allied accept service of a petition against it for underinsured motorist coverage. Due to the previous soft-tissue injuries to Dolan's back, Allied sought to depose him and his attending physician, Dr. Cairns. Dolan's deposition was taken in June 1986; Dr. Cairns' was taken in July. On August 11, 1986, Allied received a copy of Dr. Cairns' deposition, and shortly thereafter received additional information concerning Dolan's lost wages. On August 21, less than a week before trial, Allied offered Dolan $20,000 in settlement of his underinsured motorist claim. Dolan did not respond and no further negotiations took place between the parties. At trial, the jury returned a verdict stating that the amount of Dolan's damages exceeded $25,-000 by the amount of $79,361. Allied then paid Dolan the policy limit of $40,000.

On September 24, 1986, Dolan filed this action against Allied for bad faith failure to settle for the underinsured motorist policy limit. Dolan sought to recover compensatory and punitive damages. Allied moved for summary judgment, asserting (1) Dolan had failed to state a claim upon which relief could be granted since this court has not recognized the validity of a first-party bad faith claim, and (2) Dolan had failed to establish a sufficient factual basis to sustain his damage claims. The trial court denied Allied's motion. We then granted Allied's interlocutory appeal.

II

A majority of jurisdictions now recognize the first-party bad faith tort.[1] The reasons frequently cited by these courts for the adoption of the first-party bad faith tort have been catalogued by one commentator as follows:

1. Without the tort, "an insurance company can arbitrarily deny coverage and delay payment of a claim" to its insured "with no more penalty than interest on the amount owed;"

2. Due to the "uneven bargaining power between an insured and its insurer, the insured needs the extra leverage the tort of bad faith would provide to even the positions;"

3. "Insurance contracts are contracts of adhesion;"

4. The bad faith tort "is justified because of the nature of the insurance industry, which is imbued with the public interest;"

**1.** *See, e.g., Chavers v. National Sec. Fire & Casualty Co.,* 405 So.2d 1 (Ala.1987); *United Serv. Auto Ass'n v. Werley,* 526 P.2d 28 (Alaska 1974); *Noble v. National Am. Life Ins. Co.,* 128 Ariz. 188, 624 P.2d 866 (1981); *Aetna Casualty & Sur. Co. v. Broadway Arms. Corp.,* 281 Ark. 128, 664 S.W.2d 463 (1984); *Gruenberg v. Aetna Ins. Co.,* 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973); *Travelers Ins. Co. v. Savio,* 706 P.2d 1258 (Colo.1985); *Grand Sheet Metal Prod. Co. v. Protection Mut. Life Ins. Co.,* 34 Conn.Supp. 46, 375 A.2d 428 (1977); *Sullivan v. Allstate Ins. Co.,* 111 Idaho 304, 723 P.2d 848 (1986); *St. Paul & Marine v. Cumisky,* 204 Mont. 350, 665 P.2d 223 (1983); *United States Fidelity & Guar. Co. v. Peterson,* 91 Nev. 617, 540 P.2d 1070 (1974); *State Farm Gen Ins. Co. v. Clifton,* 86 N.M. 757, 527 P.2d 798 (1974); *Corwin Chrysler–Plymouth, Inc. v. Westchester Fire Ins.,* 279 N.W.2d 638 (N.D.1978); *Hoskins v. Aetna Life Ins. Co.,* 6 Ohio St.3d 272, 452 N.E.2d 1315 (1983); *Christian v. American Home Assurance Co.,* 577 P.2d 899 (Okla.1978); *Bibeault v. Hanover Ins.,* 417 A.2d 313 (R.I.1980); *Nichols v. State Farm Mut. Ins. Co.,* 279 S.C. 336, 306 S.E.2d 616 (1983); *Anderson v. Continental Ins. Co.,* 85 Wis.2d 675, 271 N.W.2d 368 (1978).

5. An insured is often "suffering from physical injury or economic loss when bargaining with the insurance company" and hence "the vulnerable position justifies the additional remedy of a bad faith cause of action;"

6. "The recognition of the bad faith tort in third-party situations justifies its recognition in first-party situations;" and

7. "When an insured purchases insurance, she is purchasing more than financial security; she is purchasing peace of mind," and "therefore, the extra remedy of bad faith is needed to insure she receives the benefit of her bargain."

Phelan, *The First Party Dilemma: Bad Faith or Bad Business?*, 34 Drake L.Rev. 1031, 1035–36 (1985–86) (citing *Spencer v. Aetna Life & Casualty Ins. Co.*, 227 Kan. 914, 917–19, 611 P.2d 149, 152–53 (1980)) [hereinafter Phelan]. A large minority of jurisdictions, however, have expressly declined to recognize the first-party bad faith tort[2], citing the following reasons to rebut those relied upon by the jurisdictions in the majority:

1. "The rationale behind a bad faith claim in a third-party situation is not applicable to first-party situations;"

2. "The 'peace of mind' argument does not justify the application of tort principles in insurance cases because every contract is entered into for peace of mind;"

3. The insurance industry is like any other commercial enterprise and is not "imbued with a public interest to justify the recognition of the bad faith tort;"

4. Insurance contracts are not contracts of adhesion because they have the approval of both parties;

5. Many states have statutory penalties against "companies which fail without good cause to settle claims with their insureds" and "these legislative remedies

are exclusive, thus eliminating the need for other remedies;"

6. "Traditional compensatory damages for breach of contract are adequate and the additional remedy of" the "bad faith tort is unnecessary;" and

7. The torts of outrage, intentional infliction of emotional distress, fraud and the tort of bad faith provide "remedies for the same wrongs and they are in fact mixed concepts used somewhat interchangeably."

*Phelan,* 34 Drake L.Rev. at 1037.

Distillation of the arguments for and against adoption of the first-party bad faith tort reveals that generally the issue has been resolved by determining whether the contractual relationship between the insurer and insured is sufficiently special to warrant providing the insured with additional protection and, relatedly, by determining whether the insured's remedies for the insurer's wrongful conduct are adequate without resort to the tort of bad faith.

We have on several occasions considered recognizing a first-party tort claim of bad faith raised by an insured against his or her own insurance carrier. In each instance, however, we found that the factual basis in the case was inadequate to support a finding of bad faith. Our findings in these cases obviated a need to embrace or disclaim this type of tort cause of action on behalf of an insured.

In *M–Z Enterprises v. Hawkeye Security Insurance Co.*, 318 N.W.2d 408, 415 (Iowa 1982), we stated:

The facts in this case do not require us to adopt or reject the tort of bad faith in the first-party situations. The decisions recognizing the tort generally hold that plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the insurer's knowledge or reckless disregard of the lack of reasonable basis for denying the claim. *See,*

---

2. *See, e.g., Tate v. Aetna Casualty & Sur. Co.*, 149 Ga.App. 123, 253 S.E.2d 775 (1978); *Guarantee Abstract & Title Co. v. Interstate Fire & Casualty Co.*, 232 Kan. 76, 652 P.2d 665 (1982); *Kewin v. Massachusetts Mut. Life Ins. Co.*, 409 Mich. 401, 295 N.W.2d 50 (1980); *Duncan v. Andrew Coun-*

ty Mut. Ins. Co., 665 S.W.2d 13 (Mo.App.1983); *D'Ambrosio v. Pennsylvania Mut. Casualty Ins. Co.*, 494 Pa. 501, 431 A.2d 966 (1981); *O'Neill v. Blue Cross*, 366 N.W.2d 816 (S.D.1985); *English v. Fischer*, 660 S.W.2d 521 (Tex.1983); *Beck v. Farmer's Ins. Exch.*, 701 P.2d 795 (Utah 1985).

*e.g., Anderson v. Continental Ins. Co.,* 85 Wis.2d 675, 691–92, 271 N.W.2d 368, 376 (1978). When a claim is "fairly debatable," the insurer is entitled to debate it, whether the debate concerns a matter of fact or law. *Id.* at 691–93, 271 N.W. 2d at 376–77. In this litigation Hawk-eye's excess weight defense and supporting evidence clearly made M–Z's claim "fairly debatable," as trial court must have determined when it submitted the issue to the jury. This being so, there was no bad faith issue in the case, and, as a matter of law, that claim should not have been submitted to the jury.

This approach was again utilized in *Higgins v. Blue Cross,* 319 N.W.2d 232, 236 (Iowa 1982). Two years later we expressed our dissatisfaction with this approach as it merely identified "the type of situation which does not permit recovery on an independent tort theory rather than identifying the type of situations, if any, which would support recovery on such a theory." *Pirkl v. Northwestern Mut. Ins. Ass'n,* 348 N.W. 2d 633, 635 (Iowa 1984). We declared that our inclination, were the issue simply theoretical, would be to not recognize a first-party bad faith tort. *Id.* at 636. In so doing we criticized the rationale underlying the test enunciated in *Anderson v. Continental Insurance Co.,* 85 Wis.2d 675, 691–92, 271 N.W.2d 368, 376 (1978), and cited in *M–Z Enterprises* and *Higgins*:

> We are not nearly as persuaded as the Wisconsin court in *Anderson* that the rationale which recognizes an ancillary duty of a liability insurer to exercise good faith in the settlement of third party claims is equally applicable and of equal importance when an insured seeks payment of a claim for a property loss from his own casualty insurer.
>
> The relationship between the insurer and its insured in the two situations is markedly different. In the former situation, a clear fiduciary duty arises which places an affirmative duty on the insurer to investigate the claim and take such additional affirmative action as is required in the best interests of its insured. In the casualty insurance situation, the relationship between insurer and insured

is for many purposes at arms length. The insurer has no clearly defined duty of investigation and may require the insured to present adequate proof of loss before paying the claim. The two parties are on opposite sides of the issue rather than being partners on the same side as in the liability insurance situation.

*Pirkl,* 348 N.W.2d at 635. We noted, however, the real issue in the case was whether punitive damages could ever be recovered in a first-party situation. *Id.* at 636. In that regard, we suggested such an award was permissible where the insurer was guilty of malice, fraud, gross negligence, or an illegal act.

In 1986, we were again invited to definitively state whether we recognized the first-party bad faith tort. In *Hoekstra v. Farm Bureau Mutual Insurance Co.,* 382 N.W.2d 100, 111 (Iowa 1986), we reverted to the approach used in *M–Z Enterprises* and *Higgins,* finding the insured's claim was fairly debatable as a matter of law. We therefore upheld the directed verdict for the insurer on that issue, and determined it was not necessary for us to decide whether we would recognize the first-party bad faith tort. *Id.* at 112. Although we declined to recognize the viability of this tort cause of action, we suggested the remedy might be found in a proper case. We prognosticated that "we shall know it when we see it." *Id.*

In this analysis, we have not needed to closely scrutinize the contractual relationship between the insurer and insured, or to evaluate the adequacy of the insured's remedies were the insurer to engage in wrongful conduct. Instead, we repeatedly applied the *Anderson* test for bad faith and, failing to find bad faith in each instance, determined we need not further address the issue. Our approach, unfortunately, has not been instructive to trial judges in deciding whether to evaluate a first-party bad faith claim under the *Anderson* test or immediately dismiss it as constituting an unrecognized cause of action. For this reason and because of its recurrent nature, we are persuaded to squarely address the issue.

As implied by our discussion regarding punitive damages in *Pirkl*, 348 N.W.2d at 636, we are convinced traditional damages for breach of contract will not always adequately compensate an insured for an insurer's bad faith conduct. Our focus, of course, is on the recompense available to the affected insured, not the extent to which the insurer may be subject to additional statutory penalties for its misconduct. The pertinent provisions of Iowa Code chapter 507B will, in all likelihood, deter nearly all bad faith conduct on the part of insurers, but when on those occasions they do not, the penalties would provide slight consolation to an aggrieved insured. Further, we do not believe the availability to the insured of extra-contractual damages should be dependent upon the insured sustaining severe emotional distress occasioned by the insurer's conduct. It follows that an action for intentional infliction of emotional distress, pursuant to *Amsden v. Grinnell Mutual Reinsurance Co.*, 203 N.W.2d 252, 254 (Iowa 1972), does not provide an adequate remedy due to its limited applicability. We conclude it is appropriate to recognize the first-party bad faith tort to provide the insured an adequate remedy for an insurer's wrongful conduct.

We think this recognition is also justified by the nature of the contractual relationship between the insurer and insured. Although we do not believe this relationship involves the same fiduciary duties as in the third-party situations, *Pirkl*, 348 N.W.2d at 653, we have frequently noted that insurance policies are contracts of adhesion. *Cairns v. Grinnell Mut. Reinsurance Co.*, 398 N.W.2d 821, 824 (Iowa 1987); *Gateway State Bank v. North River Ins. Co.*, 387 N.W.2d 344, 346 (Iowa 1986). This is due to the inherently unequal bargaining power between the insurer and insured, which persists throughout the parties' relationship and becomes particularly acute when the insured sustains a physical injury or economic loss for which coverage is sought. *See Craft v. Economy Fire & Casualty Co.*, 572 F.2d 565, 569 (7th Cir.1978); *Grand Sheet Metal Prod. Co. v. Protection Mut. Ins. Co.*, 34 Conn.Supp. 46, 51,

375 A.2d 428, 430 (1977). Recognition of the first-party bad faith tort redresses this inequality.

■■■■ Despite our criticism in *Pirkl* of some of the rationale underlying the test employed by the Wisconsin Supreme Court in *Anderson*, we believe the test itself is sound.

To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim.

*Anderson*, 85 Wis.2d at 691, 271 N.W.2d at 376. Where a claim is "fairly debatable," the insurer is entitled to debate it, whether the debate concerns a matter of fact or law. *Id.; M–Z Enterprises*, 318 N.W.2d at 415. This test creates an objective standard and makes clear the intentional nature of the tort. Also, as noted in *Anderson*, "[i]t is appropriate, in applying the test, to determine whether a claim was properly investigated and whether the results of the investigation were subjected to a reasonable evaluation and review." *Anderson*, 85 Wis.2d at 692, 271 N.W.2d at 377. With regard to the recovery of punitive damages, we adhere to the standards applied in *Pirkl*, 348 N.W.2d at 636.

### III

■■■■ Applying the *Anderson* test to the facts in this case, we are persuaded the trial court erred by denying Allied's motion for summary judgment. The existence of Dolan's previous back injury raised a fairly debatable issue regarding whether any residual disability existed when the accident occurred. It was within Allied's right to not proffer a settlement amount until after it could depose Dolan and his attending physician. No unreasonable delay by Allied occurred in obtaining this information. This was not a case where the insurer denied its insured's claim without properly investigating and evaluating it; rather, Allied merely declined to settle Dolan's claim before it could be properly reviewed. Under these circumstances, we conclude Dolan failed as a matter of law to show the

absence of a reasonable basis for Allied's action. We therefore reverse, and remand this case to be dismissed.

REVERSED AND REMANDED.

All Justices concur except HARRIS, LARSON, NEUMAN and ANDREASEN, JJ., who concur in the result only.