# IN THE COURT OF APPEALS OF IOWA

No. 17-1671
Filed October 24, 2018

**STEVEN DEVOLDER and STEPHANIE DEVOLDER,**
    Plaintiffs-Appellants,

**vs.**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and STATE FARM FIRE & CASUALTY COMPANY,**
    Defendants-Appellees.
_____

Appeal from the Iowa District Court for Polk County, David M. Porter, Judge.

Steven and Stephanie DeVolder appeal the grant of summary judgment in favor of the appellee insurers. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

S.P. DeVolder of The DeVolder Law Firm, PLLC, Norwalk, and William L. Kutmus of Kutmus, Pennington & Hook, PC, West Des Moines, for appellants.

Guy R. Cook and Adam D. Zenor of Grefe & Sidney, PLC, Des Moines, for appellees.

Considered by Danilson, C.J., McDonald, J., and Carr, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2018).

**CARR, Senior Judge.**

Steven and Stephanie DeVolder appeal the grant of summary judgment in favor of State Farm Mutual Automobile Insurance Company and State Farm Fire & Casualty Company (collectively, State Farm[1]). The DeVolders claim State Farm committed breach of contract, first-party bad faith, and fraud in processing their insurance claim. We agree with the district court that summary judgment is appropriate on the fraud and first-party bad faith claims. However, we find a genuine issue of material fact regarding the breach-of-contract claim. Therefore, we reverse on the breach claim and remand for further proceedings.

## I. Background Facts and Proceedings

On or about April 23, 2004, the DeVolders purchased a ring from Josephs Jewelers (Josephs) in West Des Moines for $28,514. On April 26, Josephs prepared a "jewelry appraisal report" describing the ring as a "lady's 18K yellow and white gold engagement ring mounting, center set with one round brilliant cut diamond weighing 3.35 cts, Color K, Clarity VS1, GM (GIA Grading Report #12607644), and also prong set with 15 full cut diamonds weighing .75 cts." The report stated the replacement value of the ring was $39,200.

The DeVolders insured the ring and their other jewelry through State Farm in a personal articles policy with inflation coverage. Premiums were based on the replacement value of the jewelry. On or about June 15, 2016, the DeVolders lost

---

[1] State Farm Replacement Services—a wholly-controlled department or entity of State Farm—assisted in processing the DeVolders' claim. "State Farm" also includes State Farm Replacement Services.

the ring.  At the time, the coverage limit on the ring was $46,081 with a $500 deductible.

Prior to filing a claim with State Farm, the DeVolders contacted Josephs for an updated appraisal for the ring.  On June 20, 2016, Josephs emailed State Farm for assistance finding a replacement diamond to calculate the replacement cost for a possible claim, but they did not mention the DeVolders at the time.  State Farm responded with information about two diamonds with lot numbers ZB12-280[2] and G16103.[3]  Josephs used information about diamond ZB12-280 to calculate an updated replacement cost of $52,827.23.  In his deposition, Steven acknowledged diamond ZB12-280 is higher quality than their lost diamond.  The DeVolders also submitted a signed "Report" from Neal Prati, a retired appraiser for Josephs who originally sold the ring to the DeVolders.  According to the Report, diamond G16103 is lower quality than the DeVolders' diamond because the two diamonds are at opposite ends of the VS1 clarity grade and the DeVolders' diamond has two inclusions—or imperfections—compared to thirteen inclusions for diamond G16103.

On or around June 21, 2016, the DeVolders filed a claim with State Farm for their lost ring.  The insurance policy contains the following conditions:

> We [State Farm] have the option of repairing or replacing the lost or damaged property.  Unless otherwise stated in this policy, covered property values will be determined at the time of loss or damage.  We will pay the cost of repair or replacement, but not more than the smallest of the following amounts:

---

[2] The provided information for diamond ZB12-280 includes: shape round, carat weight 3.34, color J, clarity VS1, and price $43,336.50.

[3] The provided information for diamond G16103 includes: shape round, carat weight 3.35, color K, clarity VS1, and price $26,967.50.

a. the full amount of our cost to repair the property to its condition immediately prior to the loss or damage;
b. the full amount of our cost to replace the item with one substantially identical to the item lost or damaged;
c. any special limit of liability described in this policy; or
d. the limit of liability applicable to the property.

State Farm subsequently obtained information about another ring from Solomon Brothers Fine Jewelry (Solomon) in Atlanta, Georgia. Solomon described its ring as "18K Y&W eng ring w/ (1) RBC center @ 3.35ct K/VS1. Also has (15) full cut dias @ .75ct tw." Solomon provided a cost of $36,985.52 for the ring. However, Stephanie testified at deposition that Solomon asked her for information about their ring instead of talking directly to Josephs even though Josephs would be the most knowledgeable about their ring.

On or about July 8, State Farm offered the DeVolders their choice of the Solomon ring or its cost of $36,985.52, less the $500 deductible, in satisfaction of their claim. The DeVolders rejected both options. In his deposition, Steven testified State Farm wanted them to accept the Solomon ring "sight unseen" and "they refused to even describe [it] to me."

On August 16, 2016, the DeVolders filed their petition alleging breach of contract, first-party bad faith, and fraud on the part of State Farm. On July 19, 2017, State Farm filed for summary judgment on all claims. On October 6, the district court granted summary judgment in favor of State Farm on all claims. The DeVolders now appeal.

## II. Standard of Review

We review a district court ruling granting a motion for summary judgment for correction of errors at law. Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. An issue is

> genuine if the evidence in the record is such that a reasonable jury could return a verdict for the nonmoving party. We . . . view the record in the light most favorable to the nonmoving party and will grant that party all reasonable inferences that can be drawn from the record. Summary judgment is appropriate if the only conflict concerns the legal consequences of undisputed facts.

*Honomichi v. Valley View Swine, LLC*, 914 N.W.2d 223, 230 (Iowa 2018) (alteration in original) (internal quotations and quotation marks omitted).

### III.     Breach of Contract

The DeVolders argue State Farm breached the insurance contract by failing to appropriately value "the loss of Stephanie DeVolder's engagement/wedding ring (stone and setting) with a like kind and comparable diamond stone and setting as required by the policy terms." The policy terms require State Farm to provide the DeVolders with either (1) a ring that is "substantially identical" to the DeVolders' ring, or (2) an amount equal to State Farm's cost to replace the DeVolders' ring with a "substantially identical" ring. The policy does not define "substantially identical." Therefore, we use the ordinary meaning of "substantially identical." *See Nat'l Sur. Corp. v. Westlake Inv., LLC*, 880 N.W.2d 724, 734 (Iowa 2016) ("When interpreting an insurance policy, we give each policy term not defined in the policy its ordinary meaning.").

The DeVolders assert State Farm is obligated to use Josephs as the exclusive arbiter of "substantially identical" rings in the area. However, nothing in the record supports this assertion. At most, the record shows State Farm typically relies on Josephs to value jewelry in the area, but the policy does not require them to do so. Even if we accept the DeVolders' assertion that State Farm took the "unprecedented" step of using a jeweler other than Josephs to find a "substantially

identical" ring in the area, nothing in the policy prevents State Farm from taking such a step.

The DeVolders point to the appraisals Josephs provided as evidence the Solomon ring is not "substantially identical" to their lost ring. The original 2004 appraisal of their ring from Josephs was $39,200, which is more than the $36,985.52 cost of the Solomon ring. However, the policy only requires State Farm to pay their "cost to replace the [lost] item with one substantially identical." Nothing in the policy or elsewhere in the record requires State Farm to pay the full appraised value of the lost ring. Additionally, the DeVolders only paid $28,514 for the ring, which suggests the cost to State Farm to replace the ring in 2004 would have been significantly less than its $39,200 appraised value.

Josephs also provided an updated appraisal of $52,827.23. However, this appraisal uses diamond ZB12-280, which Steven acknowledged is higher quality than their diamond. It is therefore not an appraisal for a "substantially identical" ring, and State Farm never admitted this diamond would make a "substantially identical" ring when it provided the information to Josephs. The email exchange in the record shows Josephs contacted State Farm for help finding suitable diamonds for an appraisal without connecting the request to the DeVolders, and State Farm merely suggested two diamonds with similar characteristics based on the brief description Josephs provided.

Additionally, the DeVolders point to vagaries in the rings' descriptions as evidence the rings are not "substantially identical." The district court found the DeVolders' ring and the Solomon ring are substantially identical because they have

diamonds with identical carat weights and grades for color and clarity.[4] Using the ordinary meaning of "substantially identical," we cannot agree two rings are "substantially identical" merely because they contain diamonds with identical carat weights and grades for color and clarity. The record shows carat weight and grades for color and clarity, without more, are insufficient to accurately value a diamond. For example, diamond G16103 and the DeVolders' diamond have identical carat weights and grades for color and clarity. However, Prati's Report explains diamond G16103 is inferior to the DeVolders' diamond due to other factors, specifically variances within the same clarity grade and inclusions within the diamonds. Additionally, the record contains little information to compare the settings of the two rings beyond sparse descriptions from Josephs and Solomon.

Prati's Report is sufficient to generate a genuine issue of material fact as to whether the Solomon ring and the DeVolders' ring are "substantially identical." Prati notes diamond G16103 is "inferior" to the DeVolders' diamond, and if they had used diamond G16103 in their valuation it "would have been right at" the Solomon valuation. Instead, Josephs provided a much higher valuation using diamond ZB12-280, which is "slightly better" than the DeVolders' diamond but still represents "a good replacement value match." Prati does "not in any way agree with the Solomon Brothers' appraisal of $36,985.52 as the correct replacement

---

[4] According to an affidavit from a procurement specialist for State Farm, the DeVolders' diamond had a cut grade of very good and the Solomon diamond had a higher cut grade of triple excellent. Like the district court, we do not find this information elsewhere in the record. As we must take the facts in the light most favorable to the DeVolders, we do not rely on this information from the appellee for this summary judgment. Even if we were to accept the cut grade of the Solomon diamond as equal or superior to that of the DeVolders' diamond, we would still find a genuine issue of material fact exists as to whether the two diamonds could be used to make "substantially similar" rings for the same reasons discussed herein.

value of" the DeVolders' ring. He criticizes Solomon for valuing the DeVolders' for using a "paper" valuation method of the DeVolders' ring instead of visually inspecting it as he has done. Therefore, the DeVolders have raised a genuine issue of material fact as to whether the Solomon ring is "substantially identical" to their ring, and summary judgment is not appropriate.

## IV.     First-Party Bad Faith

A first-party bad faith claim against a defendant insurer requires the plaintiff to prove "the absence of a reasonable basis for denying benefits of the policy and defendant's knowledge or reckless disregard of the lack of a reasonable basis." *Dolan v. Aid Ins. Co.*, 431 N.W.2d 790, 794 (Iowa 1988). However, the insurer is entitled to debate a "fairly debatable" claim. *Id.*

State Farm has not denied the DeVolders' claim. Instead, State Farm located a ring they argue is "substantially identical" to the DeVolders' ring. While a genuine issue of material fact remains as to whether the rings are "substantially identical," the record shows the rings share many characteristics. The DeVolders have not provided any evidence State Farm lacked a reasonable basis to offer the Solomon ring or its cost in satisfaction of their claim. Therefore, the district court correctly granted summary judgment in favor of State Farm on the DeVolders' first-party bad faith claim.

## V.     Fraud

A successful fraud claim "requires clear-and-convincing evidence of (1) materiality, (2) falsity, (3) representation, (4) scienter, (5) intent to deceive, (6) justifiable reliance, and (7) resulting injury and damage." *Clark v. McDaniel*, 546 N.W.2d 590, 592 (Iowa 1996). The DeVolders specifically allege State Farm

committed fraud when it rejected Josephs in favor of Solomon. However, the record contains no indication State Farm committed to following guidance from Josephs, nor does the record show State Farm falsely represented any material fact. Therefore, the district court correctly granted summary judgment in favor of State Farm on the DeVolders' fraud claim.

## VI. Conclusion

We find a genuine issue of material fact remains as to whether State Farm identified a "substantially identical" ring when it offered the Solomon ring to satisfy the DeVolders' claim. However, we find nothing in the record to support the DeVolders' claims of first-party bad faith or fraud. Therefore, we affirm the grant of summary judgment on the first-party bad faith and fraud claims, and we reverse the grant of summary judgment on the breach-of-contract claim and remand for further proceedings.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Danilson, C.J., concurs; McDonald, J., dissents.

**McDONALD, Judge** (dissenting)

I respectfully dissent. Rule 1.981(3) provides the district court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). Here, the question presented to the district court was whether the Solomon diamond was "substantially identical" to the DeVolders' lost diamond within the meaning of the policy. On this record, it is undisputed that it was. The district court thus correctly granted State Farm's motion for summary judgment.

I disagree with the rationale for reversing the judgment of the district court. The majority reverses the judgment of the district court because additional examination of the Solomon diamond using the methodology in the Prati Report *might* show it is not "substantially identical" to the DeVolders' lost diamond. However, it was the DeVolders' obligation to create the record to support their resistance to State Farm's motion for summary judgment. *See* Iowa R. Civ. P. 1.981(5) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials in the pleadings, but the response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered."). In the alternative, it was the DeVolders' obligation to seek additional time to conduct further discovery to prepare their resistance. *See* Iowa R. Civ. P. 1.981(6) ("Should it appear from the affidavits of a party opposing the

motion that the party for reasons stated cannot present by affidavit facts essential to justify the opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."). In resisting summary judgment, the DeVolders could have sought additional time for their expert to inspect the ring. They did not do that. The fact that discovery the DeVolders bothered not to conduct *might* have revealed the existence of a disputed issue of fact is insufficient to create a genuine issue of fact for trial.

The district court correctly decided the motion for summary judgment on the record actually made. I respectfully dissent.