# IN THE COURT OF APPEALS OF IOWA

No. 15-1612
Filed September 28, 2016

**THOMAS SCHLAPKOHL and
LANA SCHLAPKOHL,**
      Plaintiffs-Appellants,

**vs.**

**AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,**
      Defendant-Appellee.

_____

      Appeal from the Iowa District Court for Polk County, Lawrence P. McLellan (granting summary judgment on bad-faith claim) and Rebecca Goodgame Ebinger (granting summary judgment on fraud claim), Judges.

      Thomas and Lana Schlapkohl appeal from summary judgment entered for their insurer, American Family Mutual Insurance Company, in this action asserting bad faith and fraud. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

      Benjamin G. Arato and Robert G. Tully of the Law Offices of Rob Tully, P.C., West Des Moines, for appellants.

      Brenda K. Wallrichs and Kent A. Gummert of Lederer Weston Craig, P.L.C., Cedar Rapids and West Des Moines, for appellee.

      Heard by Danilson, C.J., and Mullins and Bower, JJ.

**DANILSON, Chief Judge.**

Thomas and Lana Schlapkohl appeal from two summary judgment rulings entered for their insurer, American Family Mutual Insurance Company, in this action asserting bad faith and fraud. The Schlapkohls contend the district court erred in concluding the bad-faith claim was barred by the insurance contract's one-year limitation period, and further, the court erred in concluding there was no genuine issue as to the scienter and intent-to-deceive elements for purposes of their fraud claim.

Because the Schlapkohls were entitled to bring a separate action after the arbitration hearing and had no knowledge the denial of their claim was premised upon an alleged "secret" policy until the arbitration hearing, the one-year contractual limitations period does not bar their bad-faith claim. However, the Schlapkohls failed to raise any genuine issue with respect to the elements of scienter or intent to deceive, which would support their fraud claim, and the district court did not err in entering summary judgment for the insurer. We therefore affirm in part, reverse in part, and remand for further proceedings concerning the bad-faith claim.

## I. Background Facts and Proceedings.

The Schlapkohls filed this action against American Family alleging two claims, one for bad faith and the second for fraud. The claims arose as a result of actions taken by American Family concerning roof damage suffered by the Schlapkohls as a result of an August 8, 2012 hail storm.

The claim for roof damages was resolved through arbitration. The facts supporting the bad-faith and fraud claims were not discovered until the arbitration

hearing. The bad-faith claim was dismissed by summary judgment as being barred by the contractual statute of limitations. The Schlapkohls contend the policy's one-year limitation is inapplicable because the claim was not "on the policy." Their fraud claim was dismissed after a subsequent and second motion for summary judgment. The issues on the second motion were whether there were genuine issues of material fact on the fraud elements of scienter and intent to deceive.

It is undisputed the Schlapkohls first purchased coverage in 2000 from American Family. The policy in effect at the time of the August 2012 hail storm provided: "**Suit Against Us.** We may not be sued unless there is full compliance with all the terms of this policy. Suit must be brought within one year after the loss or damage occurs."

With respect to coverage, an applicable endorsement (Endorsement 587) to the policy provided:

> **b. Buildings Which Have a Permanent Foundation and Roof Insured at 100% of Replacement Cost.**
> Buildings insured at 100% of replacement cost will be settled at replacement cost, subject to the following:
> **(1) Replacement Cost.**
> If at the time of loss, the Increased Building Limit Coverage as provided under the Supplementary Coverages—Section I applies, we will pay the cost to repair the damaged portion or replace the damaged building, provided repairs to the damaged portion or replacement of the damaged building are completed, but not exceeding the smallest of:
> (a) the cost to replace the damaged building with like construction for similar use on the same premises;
> (b) the amount actually and necessarily spent for repair of the damaged portion or replacement of the damaged building; or
> (c) 120% of the limit applying to the damaged building.

The policy also provided:

**15. Our Settlement Options**.
In the event of a covered loss, **we** have the option to: . . . .

(b) pay the cost to repair, rebuild or replace all or the necessary part(s) of the damaged, destroyed or stolen property with like property, as of the time of loss, less an allowance for depreciation when replacement cost coverage doesn't apply.

After the hail storm on August 8, 2012, the Schlapkohls made a claim for total replacement of their sixteen-year-old roof.

The insurer had the roof inspected by Haag Engineering Company. The resulting report concluded:

1. There was hail-caused damage to certain shingles on the Schlapkohl residence roof. We tallied a total of 19 field and valley shingles and 4 ridge shingle tabs damaged by hail.

2. The hail damage found on the dwelling roof exhibited exposed asphalt that weathered indicating the damage did not occur from the August 8, 2012, storm. Spatter marks on the algae-covered shingles with no coincident hail damage further indicated the hail-damaged shingles occurred on an older storm date.

3. Dents on the downspout, gutters, static attic vents, related to hailfall were a cosmetic condition that would not functionally alter the material.

4. Spatter marks indicated that the hail fell from a northwesterly direction. The chipped and fractured paint on the wood surfaces of the front elevation were consistent with the recent hail event.

5. The four broken fiber cement corners on the west elevation with paint filled broken edges were consistent with older hail damage.

On September 19, 2012, the insurer informed the Schlapkohls some damage had been found but it was not "significant enough to warrant replacement of the roof," provided a copy of the Haag report, and sent a copy of the insurer's estimate and a check for "actual cash damages." American Family also informed the Schlapkohls that should they disagree, they had the option to arbitrate or go through an appraisal process under the policy.

The Schlapkohls commissioned an October, 12, 2012 report (ITEL report),[1] which stated, "[T]he matching products listed on this report are the closest in today's market to the sample received. There are no products available today that match the shingle exact to complete a repair due to weathering, color fading and granular loss."

On November 13, 2012, the insurer wrote to counsel for the Schlapkohls, stating in part:

> The Policy language gives American Family the option to repair the portions of Mr. and Mrs. Schlapkohl's home if the amount expended for repair is smaller than the amount expended for replacement. The language also makes it clear that American Family only need . . . replace the parts of the property that were damaged.
> Iowa Administrative Code [r]ule [191-]15.44(1)[2] does not apply to this case. The [r]ule requires only that the repair result in a "reasonably uniform appearance" within the line of sight. Your letter is the first indication that American Family has had that shingles of the same color may not be available.
> You claim that some of your clients' neighbors have had their roofs replaced as a result of damage done to those roofs in the storm of August 8, 2012. American Family does not have information about the extent of the damage done to roof damage to those homes. We have had professional engineers inspect your clients' roof and determine that replacement of the roof, in this case, is not warranted.

The Schlapkohls opted to arbitrate the dispute. On August 27, 2013, an arbitrator ruled the insurer must pay the cost associated with a full roof replacement. The arbitrator's award noted the ITEL report indicated two "similar" shingle product matches were available; "[n]either party compared the products

---

[1] ITEL is a company that evaluates asphalt roofing, specializing in determining matching shingle products.
[2] Rule 191-15.44(1)(b) provides: "When a loss requires replacement of items and the replaced items do not match in quality, color or size, the insurer shall replace as much of the item as is necessary to result in a reasonably uniform appearance within the same line of sight."

identified in the ITEL report to the shingles as they exist on the roof"; "[t]he roof is 16 years old"; and "[t]he weathering process has taken its toll." The arbitrator concluded, "[P]ursuant to the [Iowa Administrative Code] subsection cited above, . . . neither product identified in the ITEL report, if used to partially patch the damaged shingles, would result in a 'reasonably uniform appearance.'"

On December 3, 2013, the Schlapkohls sued American Family Insurance for bad-faith failure to pay benefits, alleging in part:

> 17. [American Family] offered to only repair a small amount of the [Schlapkohls'] roof because it had an internal policy stating that roofs would only be replaced if they were more than fifty percent damaged. If the roof was less than fifty-percent damaged, [American Family] would only offer to make repairs, regardless of whether or not the homeowner was left with a mismatched roof.
> 18. [American Family] had no reasonable basis for denying benefits under the policy and [American Family] knew or recklessly disregarded the lack of a reasonable basis for denying the [Schlapkohls] benefits.
> 19. As a result, [the Schlapkohls] incurred damages, including attorney fees.

The Schlapkohls also asserted a claim of fraud, alleging they were unaware of the "private internal policy which only required [American Family] to abide by the policy if the [Schlapkohls'] roof was more than fifty-percent damaged," they relied on the contract language, and consequently suffered damages.

American Family filed a motion for summary judgment, contending the claims were barred by the one-year limitations period in the policy. On April 15, 2014, the district court granted summary judgment on the bad-faith claim[3] but

---

[3] The court wrote,

> The complaints that the Schlapkohls assert arise as a result [of] the manner in which American Family handled the claim. The conduct

found material facts in dispute that precluded summary judgment on the fraud claim.

Following additional discovery, American Family again moved for summary judgment, alleging they were entitled to judgment of dismissal on the fraud claim. On August 28, 2015, the district court concluded:

> Viewing the facts in the light most favorable to the [Schlapkohls], 1) American Family misrepresented the applicability of Iowa Administrative Code section 191-55.44; 2) American Family did not disclose the internal policy that an entire roof replacement was only available if the roof received damage of more than 50%; and 3) these misrepresentations caused [the Schlapkohls] damage, evidenced by their choice to pursue arbitration. These facts are insufficient to defeat the motion for summary judgment because [the Schlapkohls] did not present specific facts demonstrating American Family's statements were made with intent to deceive or scienter. . . . American Family had evidence that their proposed replacement of [the Schlapkohls'] roof could conform to the Iowa Administrative Code requiring "uniform appearance" for a replacement. American Family presented undisputed evidence that the ITEL report said similar replacement shingles were available. The Arbitrator's disagreement as to the availability of conforming shingles and conclusion that the Iowa Administrative Code warranted an entire roof replacement does not render American Family's statement intentionally deceptive or knowingly false.
> . . . .
> Likewise, American Family's failure to explicitly disclose the internal policy allowing replacements only for roofs damaged more than 50% does not demonstrate an intent to induce, nor have [the Schlapkohls] alleged specific facts demonstrating American Family's intent to deceive or scienter based on the internal policy.

---

> occurred while the claim was being processed by American Family. The Schlapkohls do not assert additional facts that would give rise to a collateral or independent claim against American Family. The fact that the Schlapkohls do not seek policy benefits here does not make the action a collateral or independent cause of action.
> Based upon the alleged facts the court finds that count I, while apparently not seeking policy benefits as damages, still remains a first party bad faith claim against American Family. The court finds in this context it is claim "on the policy" subject to the one-year limitations provision in the policy. Since this claim was not brought within one year of the inception of the damage, American Family is entitled to summary judgment on this count.

American Family told [the Schlapkohls] their roof damage was not "significant enough to warrant replacement." This statement is consistent with the internal policy and accurately, not fraudulently, represents the terms of the parties' contract, which authorizes replacement or repair. Notwithstanding, [the Schlapkohls] argue that an inference of intent to deceive can be drawn from the unincorporated internal policy and contend that the internal policy is inconsistent with the Iowa Administrative Code. This argument fails because American Family's representations to [the Schlapkohls] regarding the replacement offer were truthful and, even if based on the ITEL report, conformed with the Iowa Administrative Code. [The Schlapkohls] identified no further specific facts in response to summary judgment supporting the inference of American Family's intent or scienter. Similarly, [the Schlapkohls] did not present evidence that American Family made false statements or statements with reckless disregard for their truth at the time of contracting. [The Schlapkohls'] claim that American Family's omissions "induced" them to enter into the initial insurance contract, or that [the Schlapkohls] relied on any omissions to their detriment are deficient.

The Schlapkohls appeal, contending summary judgment was entered in error.

## II. Scope and Standard of Review.

We review summary judgment rulings for corrections of errors at law. *Sanon v. City of Pella*, 865 N.W.2d 506, 510 (Iowa 2015). Summary judgment is appropriate only if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 1.981(3); *Nelson v. Lindaman*, 867 N.W.2d 1, 6 (Iowa 2015).

*Villarreal v. United Fire & Cas. Co.*, 873 N.W.2d 714, 719 (Iowa 2016). On a motion for summary judgment, the court must: "(1) view the facts in the light most favorable to the nonmoving party, and (2) consider on behalf of the nonmoving party every legitimate inference reasonably deduced from the record." *Van Fossen v. MidAm. Energy Co.*, 777 N.W.2d 689, 692 (Iowa 2009).

**III. Discussion.**

**A. Bad-Faith Claim and Limitations Period.** To establish a claim for bad faith against an insurer, an insured "must show the absence of a reasonable basis for denying benefits of the policy" and that the insurer knows or has "reason to know that its denial is without basis." *Reuter v. State Farm Mut. Auto. Ins. Co.*, 469 N.W.2d 250, 253 (Iowa 1991); *see also Stahl v. Preston Mut. Ins. Ass'n*, 517 N.W.2d 201, 203 (Iowa 1994). As was stated in *Bellville v. Farm Bureau Mutual Insurance Co.*, 702 N.W.2d 468, 473-74 (Iowa 2005),

> [T]he plaintiff was required to prove (1) [the insurer] had no reasonable basis for denying the plaintiff's claim or for refusing to consent to settlement, and (2) the [insurer] knew or had reason to know that its denial or refusal was without reasonable basis. The first element is an objective one; the second element is subjective.
>
> *1. Objective element: lack of reasonable basis.* A reasonable basis exists for denial of policy benefits if the insured's claim is fairly debatable either on a matter of fact or law. A claim is "fairly debatable" when it is open to dispute on any logical basis. Stated another way, if reasonable minds can differ on the coverage-determining facts or law, then the claim is fairly debatable.
>
> The fact that the insurer's position is ultimately found to lack merit is not sufficient by itself to establish the first element of a bad-faith claim. The focus is on the existence of a debatable issue, not on which party was correct.
>
> Whether a claim is fairly debatable can generally be decided as a matter of law by the court. That is because "'[w]here an objectively reasonable basis for denial of a claim *actually exists*, the insurer cannot be held liable for bad faith as a matter of law.'"
>
> . . . .
>
> *2. Subjective element: knowledge of lack of reasonable basis.* Even when the insurer lacks a reasonable basis for its denial of a claim, liability for bad faith will not attach unless the insurer knew or should have known that the basis for denying its insured's claim was unreasonable.

(Citations omitted.)

In *Stahl*, the court explained that the tort of bad faith was adopted because of the inherent unequal bargaining power between insurer and insured and

"'traditional damages for breach of contract will not always adequately compensate an insured for an insurer's bad faith conduct.'" 517 N.W.2d at 203 (quoting *Dolan v. Aid Ins. Co.*, 431 N.W.2d 790, 794 (Iowa 1988)). The *Stahl* court rejected the rule some states apply—"[w]here a contractual limitation refers only to actions upon a policy, it does not necessarily refer to different or collateral actions involving, in some measure, the policy proceeds"—determining there existed an important distinction between an action "arising out of the contractual relationship" and an action "on the policy." *Id.*

> While the distinctions drawn by courts are sometimes subtle, *absent conduct on the part of the insurer giving rise to an independent or collateral cause of action, most actions must be brought within the time allowed by the policy.* In analyzing these claims courts have examined the character of the alleged bad-faith conduct, the timing of the relevant events, and the type of damages sought.
> Courts have generally limited exemptions from a policy's limitations provision to *situations where the events constituting bad faith occur either before or after the loss which triggers policy coverage.*

*Id.* at 203–04 (emphasis added) (citations omitted). In cases where the cause of action is for wrongful denial of the claim, the court concluded it was "on the policy." *See id.* at 204.

Notwithstanding, the Schlapkohls attempt to characterize their bad-faith claim as falling outside the scope of the contractual limitations period, maintaining that the actions about which they complain arose during the arbitration proceeding—that is, during the arbitration they learned of American Family's "secret policy" of not paying for roof replacement unless the insured experienced more than fifty-percent damage. The Schlapkohls contend they are

seeking to recoup the costs associated with litigating the arbitration and thus the claim is not "on the policy" as that phrase is used in controlling case law.

The contractual limitation period established in the insurance policy provides: "We may not be sued unless there is full compliance with all the terms of this policy. Suit must be brought within one year after the loss or damage occurs." This language does not reference suits "on the policy" but rather appears to encompass all actions against the insurer. Nonetheless American Family relies upon the case law referencing "on the policy."

Here, the time period between the loss and the initiation of the lawsuit was approximately sixteen months. However, the discovery of the "secret" internal policy was only about four months before suit was filed. The damages sought by the action are the attorney fees incurred by Schlapkohls in arbitrating their claim.[4]

We agree with American Family that the denial of the claim based upon the inapplicability of the administrative code and the dispute regarding similar or exact shingles, if abusive, were not actions collateral to the handling of the Schlapkohls' claim, a necessary prerequisite for evading the contractual limitations provision. *See Stahl*, 517 N.W.2d at 204 (concluding the insured's claim of bad faith was "a disguised attempt to resolve a dispute as to the [insurance company's] liability for his loss"); *see also Ingrim v. State Farm Fire & Cas. Co.*, 249 F.3d 743, 746 (8th Cir. 2001) (finding the bad-faith claim contractually time barred was "an exercise in artful pleading, an attempt to avoid the rule in *Stahl*").

---

[4] For purposes of resolving the contractual limitations issue, it does not matter what portion of the roof was damaged or whether matching shingles were available.

However, the claim concerning the secret fifty-percent company policy was not known until the arbitration hearing. Our supreme court has acknowledged that not all bad-faith claims can be raised in the initial or original contract action dependent upon when the bad faith conduct occurred. *See Villarreal*, 873 N.W.2d at 728-30. Our supreme court has also long recognized that an action "'accrues'" when all the elements are known, or in the exercise of reasonable care should have been known." *LeBeau v. Dimig*, 446 N.W.2d 800, 801 (Iowa 1989). Even if the Schlapkohls' claims of bad faith and fraud premised upon the policy had been immediately raised when first discovered, the claims could not have been fully and fairly adjudicated during the arbitration hearing. *See Villarreal*, 873 N.W.2d at 729. Even if the one-year limitation applies, the Schlapkohls were entitled to bring a separate action after the arbitration hearing because they had no knowledge the denial of their claim was premised upon an alleged "secret" policy until the arbitration hearing. In sum, their bad-faith claim was not barred because their claim did not accrue until it was known.

**B. Fraud Claim.** The elements of a fraudulent misrepresentation claim are (1) representation, (2) falsity, (3) materiality, (4) scienter, (5) intent, (6) justifiable reliance, and (7) resulting injury. *Smidt v. Porter*, 695 N.W.2d 9, 22 (Iowa 2005). The Schlapkohls must prove their claim by a preponderance of clear, satisfactory, and convincing evidence. *Id.*

The Schlapkohls' fraud claim alleges that they were fraudulently induced by the insurer's misrepresentations. They assert the internal policy demonstrates American Family's intent to not abide by the contract and constitutes fraud on the

contract, above and beyond a mere breach. They argue the written policy, without any mention of the internal rule, "induced" them to enter into the contract.

The second alleged misrepresentation is that American Family did not acknowledge the applicability of Iowa Administrative Code rule 191-15.44 prior to arbitration, that there is inconsistency between the Iowa Administrative Code and the internal policy, and this inconsistency demonstrates American Family's intent to deceive.

American Family moved for summary judgment on the fraud claim, asserting it was entitled to judgment as a matter of law because the Schlapkohls had failed to show a genuine issue of material fact as to the elements of scienter and intent to deceive. The district court agreed. As quoted above, the district court rejected this claim, concluding that viewing the facts in the light most favorable to the Schlapkohls, they failed "to point to any specific facts demonstrating American Family intended to deceive by stating the Iowa Administrative Code did not apply," failed to "demonstrate an intent to induce, []or . . . alleg[e] specific facts demonstrating American Family's intent to deceive or scienter based on the internal policy," and "did not present evidence that American Family made false statements or statements with reckless disregard for their truth at the time of contracting." Moreover, the district court rejected the Schlapkohls' claim that American Family's omissions induced them to enter into the initial insurance contract, or that the Schlapkohls "relied on any omissions to their detriment."

On appeal, the Schlapkohls argue the district court failed to afford them several inferences, all of which arise from the ITEL report, which they claim is a

"disputed piece of factual evidence." The Schlapkohls assert the report "contain[ed] an inference that the Iowa Administrative Code's 'uniform appearance' requirement could not be met"; that similar matching shingles were not available; and the similar available shingles would not match the Schlapkohls' roof in its current weathered condition.

In deciding a motion for summary judgment, "[t]he evidence is viewed in the light most favorable to the nonmoving party." *Mueller v. Wellmark, Inc.*, 818 N.W.2d 244, 253 (Iowa 2012).

Even assuming (as the district court did) American Family misrepresented the applicability of rule 199-15.4 and did not disclose its internal fifty-percent policy (and thereby caused the Schlapkohls damage as evidenced by their choice to pursue arbitration), the Schlapkohls have failed to respond to the insurer's summary judgment motion with "specific facts that show a genuine issue for trial" with respect to the elements of scienter or intent. *See id.* at 253 (quoting *Green v. Racing Ass'n of Cent. Iowa*, 713 N.W.2d 234, 246 (Iowa 2006)). Again, we observe that when a motion for summary judgment is made and supported, the nonmoving party "may not rest upon the mere allegations or denials in the pleadings" and "must set forth specific facts showing that there is a genuine issue for trial." Iowa R. Civ. P. 1.981(5). The additional inferences noted above do not address the absence of evidence that asserted misrepresentations by American Family were made knowing they were false or made with intent to deceive the Schlapkohls.

Nothing in the record shows American Family made the September 19, 2012 written statements regarding the applicability of the Iowa Administrative

Code with "actual knowledge of the falsity of [their] representation or [were made] in reckless disregard of whether those representations are true or false." *Van Sickle Constr. Co. v. Wachovia Commercial Mortg., Inc.*, 783 N.W.2d 684, 688 (Iowa 2010). Notwithstanding the arbitrator's conclusion that the Iowa Administrative Code warranted an entire new roof, American Family presented undisputed evidence—the Schlapkohls' own October 2012 commissioned ITEL report—that similar replacement shingles were available.

Nor does American Family's failure to explicitly disclose its internal policy allowing replacements only for roofs damaged more than fifty-percent demonstrate an intent to deceive. The summary judgment record clearly indicates that American Family informed the Schlapkohls their roof damage was not "significant enough to warrant replacement." This statement is consistent with the internal policy and accurately, not fraudulently, represents the terms of the parties' insurance contract. As a matter of law, the Schlapkohls failed to raise any genuine issue of material fact with respect to the elements of scienter or intent to deceive. The district court did not err in entering summary judgment for the insurer on the fraud claim.

We affirm the entry of summary judgment on the Schlapkohls' fraud claim against American Family Insurance. However, we reverse the entry of summary judgment on the bad-faith claim and remand for further proceedings.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**