**Opinion filed July 19, 2012**



# In The

# Eleventh Court of Appeals

_____

## No. 11-10-00235-CV

_____

## CRAIG CARPENTER, Appellant

## V.

## SOUTHWEST MEDICAL EXAMINATION SERVICES, INC., Appellee

**On Appeal from the 244th District Court**

**Ector County, Texas**

**Trial Court Cause No. C-127,252-B**

### O P I N I O N

This is an appeal from a summary judgment in a suit arising from the processing of a workers' compensation claim. We affirm.

*Background Facts*

Craig Carpenter suffered an on-the-job injury on November 30, 2007. Liberty Insurance Corporation (Liberty) was the workers' compensation carrier providing coverage for Carpenter's claim. In January 2008, Liberty denied Carpenter's request for knee surgery based on its determination that the requested surgery would be treating a preexisting condition. Liberty subsequently requested the Texas Department of Insurance, Division of Workers' Compensation,

(the Division) to name a "designated doctor" to examine Carpenter. *See* TEX. LAB. CODE ANN. § 408.0041 (West Supp. 2011).[1] The Division named Dr. Robert Stumhoffer as the designated doctor to examine Carpenter. Dr. Stumhoffer examined Carpenter on May 9, 2008. Dr. Stumhoffer concluded that the intended knee surgery was related to a preexisting condition and that Carpenter had reached maximum medical improvement.

Southwest Medical Examination Services, Inc. (Southwest) is a company that provides various administrative services to companies and physicians involved in the workers' compensation insurance field. As related to this appeal, Southwest provided administrative services to both Liberty and Dr. Stumhoffer in connection with Carpenter's claim. Liberty retained Southwest to file with the Division the form requesting the assignment of a designated doctor to examine Carpenter. After the Division named Dr. Stumhoffer as the designated doctor, a registered nurse affiliated with Southwest provided Dr. Stumhoffer with "an analysis of the injured employee's medical condition, functional abilities, and return-to-work opportunities" on behalf of Liberty. *See* Section 408.0041(c). With respect to Dr. Stumhoffer, Southwest provided him with administrative services consisting of scheduling, billing, transcription, and a location for his examination.

Following Dr. Stumhoffer's examination of Carpenter on May 9, 2008, representatives of Liberty and Carpenter participated in a Benefit Review Conference (BRC) on May 20, 2008.[2] One of the issues considered at the BRC was whether Dr. Stumhoffer should be removed as the designated doctor because of a conflict of interest stemming from Southwest's work for both Dr. Stumhoffer and Liberty. The parties subsequently executed a written agreement wherein they agreed as follows: "[T]he parties agree that the Division should appoint a second Designated Doctor because any doctor from [Southwest] has at least the potential for a perceived conflict of interest because the Carrier retained [Southwest] for a pre-DD medical review and any report from [a Southwest] doctor in this case (AND ONLY THIS CASE) is NOT VALID." Liberty

---

[1]As per the Division's website:

> A designated doctor is a doctor selected by Texas Department of Insurance, Division of Workers' Compensation (TDI-DWC) to make a recommendation about an injured employee's medical condition or to resolve a dispute about a work-related injury or occupational illness. The injured employee, the employee's representative, the insurance carrier or TDI-DWC can request an examination by a designated doctor. TDI-DWC will determine if a designated doctor should be appointed to conduct the exam.

[2]As per the Division's website:

> The BRC is an informal meeting held at a local TDI-DWC office where [the injured employee] will meet with someone from the insurance company to discuss the disputed issues in front of a TDI-DWC Benefit Review Officer. If the dispute is resolved, an agreement may be written and signed by [the injured employee] and the insurance carrier.

also agreed not to use Dr. Stumhoffer's report "for any purpose." The Division subsequently named Dr. Phillip Robert Zeeck as the designated doctor to examine Carpenter. Dr. Zeeck determined that the contemplated knee surgery was related to the on-the-job injury. Based upon Dr. Zeeck's determination, the parties entered into an agreement on September 23, 2008, acknowledging that the planned surgery was related to the on-the-job injury. Liberty subsequently paid past benefits to Carpenter and approved the knee surgery in October 2008.

Carpenter filed suit against Liberty, Dr. Stumhoffer, and Southwest on March 12, 2009. He alleged that the defendants were liable to him under theories of common-law bad faith, statutory bad faith, and fraud for the damages he allegedly incurred from Liberty's delay in paying benefits to him for five months. Carpenter subsequently amended his pleadings to include alleged violations of the Insurance Code and the Deceptive Trade Practices-Consumer Protection Act.[3] He also alleged that Southwest engaged in a conspiracy to commit fraud. Carpenter based these causes of action on the assertion that Southwest concealed the nature of the relationship between it, Liberty, and Dr. Stumhoffer. Southwest filed a motion for partial summary judgment alleging that it was not liable to Carpenter as a matter of law. The trial court granted Southwest's motion for partial summary judgment and severed all claims against Southwest into a separate action so that the judgment in favor of Southwest would be final. Carpenter challenges the summary judgment in a single issue on appeal.

*Standard of Review*

We review the trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). A trial court must grant a traditional motion for summary judgment if the moving party establishes that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991). Once the movant establishes a right to summary judgment, the nonmovant must come forward with evidence or law that precludes summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979). When reviewing a traditional summary judgment, the appellate court considers all the evidence and takes as true evidence favorable to the nonmovant. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). The appellate court "must consider whether reasonable and

---

[3]*See* TEX. BUS. & COM. CODE ANN. § 17.41–.63 (West 2011 & Supp. 2011).

fair-minded jurors could differ in their conclusions in light of all of the evidence presented" and may not ignore "undisputed evidence in the record that cannot be disregarded." *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755, 757 (Tex. 2007).

*Analysis*

The basis of Carpenter's causes of action is that Southwest should have disclosed its relationship with both Liberty and Dr. Stumhoffer when the Division named Dr. Stumhoffer as the designated doctor to examine him at Liberty's request.  Carpenter contends that Southwest committed fraud and breached a duty of good faith and fair dealing by failing to disclose the relationship.  He contends that Southwest had a duty to disclose the relationship under the Division's administrative rules, the Labor Code, the Insurance Code, and the DTPA.  In this regard, 28 TEX. ADMIN. CODE § 180.21(m)(9) (2006) (Tex. Dep't of Ins., Div. of Workers' Comp., Div. Designated Doctor List) requires a designated doctor to notify the Division of a "disqualifying association" after his or her appointment.[4]  Carpenter contends that this provision placed a duty upon Southwest to disclose its relationship with Dr. Stumhoffer.  Additionally, Carpenter contends that Southwest violated a duty of good faith and fair dealing by virtue of its association with Liberty.  He also contends that Southwest engaged in a civil conspiracy with Liberty and Dr. Stumhoffer to the extent that they failed to disclose the relationship.

We note at the outset that the Texas Supreme Court recently issued an opinion in *Texas Mutual Insurance Co. v. Ruttiger*, No. 08-0751, 2012 WL 2361697 (Tex. June 22, 2012), that affects this appeal.  *Ruttiger* involved a lawsuit by an injured employee filed against his employer's workers' compensation carrier.  2012 WL 2361697, at *1.  The carrier initially delayed paying benefits to the employee based upon its contention that his alleged injury did not occur at work.  *Id*. at *2.  Within a few months of the carrier's denial, the employee requested a Benefit Review Conference.  *Id*.  The employee and the carrier entered into a benefit dispute agreement at the conference wherein they agreed that the employee suffered a compensable injury.  *Id*.  The  employee filed suit against the carrier while the workers' compensation claim was still pending, alleging that the carrier had engaged in unfair claim settlement practices under the Insurance Code and the DTPA by failing to properly investigate his claim for benefits.  *Id*. at *3.  He also alleged that the carrier had violated the common-law duty of good faith and fair

---

[4]The regulation defines a disqualifying association as "[a]ny association that may reasonably be perceived as having potential to influence the conduct or decision of a doctor."  Section 180.21(a)(2).

4

dealing. *Id*. The employee asserted that he suffered damages because of the carrier's delay in paying benefits to him.

The supreme court held that the regulatory scheme set out in the Workers' Compensation Act (the Act), as amended in 1989, precluded the injured employee's causes of action regarding the manner in which the carrier had handled the processing of his workers' compensation claim. *Ruttiger*, 2012 WL 2361697; *see* TEX. LAB. CODE ANN. tit. 5 (West 2006 & Supp. 2011). The court began its analysis by noting that the 1989 amendments to the Act contained significant changes, including reforms to the dispute resolution process. *Ruttiger*, 2012 WL 2361697, at *1. The court recognized:

> The 1989 amendments and the current Act provide significantly more meaningful proceedings at the administrative agency level so as to reduce the number and costs of judicial trials, speed up the time for the entire dispute resolution process, and facilitate interlocutory payment of benefits pending final resolution of disputes. To achieve these purposes the amended Act contains detailed procedures and penalties for failures of the various interested parties to comply with statutory and regulatory requirements.
>
> . . . .
>
> The purpose of the Act is to provide employees with certainty that their medical bills and lost wages will be covered if they are injured. An employee benefits from workers' compensation insurance because it saves the time and litigation expenses inherent in proving fault in a common law tort claim. But a subscribing employer also receives a benefit because it is then entitled to assert the statutory exclusive remedy defense against the tort claims of its employees for job related injuries.
>
> . . . .
>
> To accomplish these purposes, the Act provides detailed notice and administrative dispute resolution proceedings that include specific deadlines and incorporate a "conveyor-belt" approach. That is, once the administrative dispute resolution process is initiated, a dispute continues through the process until the dispute is resolved either by the parties or by a binding decision through the resolution procedures.
>
> . . . .
>
> It is apparent that the Act prescribes detailed, [Division]-supervised, time-compressed processes for carriers to handle claims and for dispute resolution. It has multiple, sometimes redundant but sometimes additive, penalty and sanction provisions for enforcing compliance with its requirements.

*Id*. at \*7–10 (internal citations omitted).

The court concluded that a separate cause of action under the Insurance Code alleging the untimely processing of a claim by a workers' compensation carrier would be inconsistent with the Act. *Id*. at \*10. In this regard, the court acknowledged that the Act contained comprehensive guidelines for the timely resolution of claims. The court additionally noted that permitting a cause of action independent of the Act would undermine the Act's goal of promptly resolving claims because the employee would have an incentive to delay seeking redress in the administrative system in order to increase his damages. *Id*. at \*10–11.

The court in *Ruttiger* also addressed the duty of good faith and fair dealing that it had previously recognized in *Arnold v. National County Mutual Fire Insurance Co*., 725 S.W.2d 165, 167 (Tex. 1987), and had extended to workers' compensation carriers in *Aranda v. Insurance Co. of North America*, 748 S.W.2d 210 (Tex. 1988). *Id*. at \*14. The court concluded that "the Legislature has substantially remedied the deficiencies that led to this Court's extending a cause of action under *Arnold* for breach of the duty of good faith and fair dealing to the workers' compensation system." *Id*. at \*17. Accordingly, the court overruled *Aranda* by holding that an injured employee may not assert a common-law claim for breach of the duty of good faith and fair dealing against a workers' compensation carrier. *Id.* at \*1, \*19.

The holding in *Ruttiger* applies to the causes of action asserted by Carpenter. As was the case in *Ruttiger*, Carpenter is asserting a common-law cause of action for breach of the duty of good faith and fair dealing against Southwest by virtue of its relationship with Liberty. Under *Ruttiger*, this cause of action would not be viable against Liberty. Given the derivative nature of Carpenter's claim, we conclude that *Ruttiger* precludes a common-law claim for breach of the duty of good faith and fair dealing against an entity sued as a result of its affiliation with a workers' compensation carrier.

*Ruttiger* also establishes that Carperter's other claims are precluded by the Act. The basis of his complaints is that Southwest had a duty to disclose the relationship. He relies on provisions of the administrative regulations and statutes governing the disclosure requirements of a designated doctor to contend that Southwest had a duty to disclose. As was the case in *Ruttiger* where the Act and its attendant regulations contained extensive guidelines and penalties for the prompt investigation of claims, the Act and regulations contain comprehensive measures regulating the applicable disclosure requirements. The Act also provides various administrative sanctions for the failure to comply with the disclosure requirements. *See* 28 TEX. ADMIN. CODE

§ 180.26 (2011) (Tex. Dep't of Ins., Div. of Workers' Comp., Criteria for Imposing, Recommending and Determining Sanctions; Other Remedies). Furthermore, the Act provides for the prompt resolution for disputes of this type. Carpenter presented his complaint concerning a perceived conflict of interest within two weeks after Dr. Stumhoffer examined him. Carpenter successfully obtained the disputed benefits within roughly the same time frame as the claimant in *Ruttiger*. Accordingly, we hold that the Act provides the exclusive dispute procedures for the claims asserted by Carpenter.

Moreover, Southwest's liability to Carpenter is precluded because Southwest had no contractual relationship with Carpenter. Southwest's relationship with Carpenter is quite similar to that of an independent adjuster. The Texas Supreme Court held in *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 698 (Tex. 1994), that an independent adjusting firm does not owe an insured a duty of good faith and fair dealing. Citing *Natividad*, the court in *Dear v. Scottsdale Ins. Co.*, 947 S.W.2d 908, 916–17 (Tex. App.—Dallas 1997, writ den'd), *disapproved of on other grounds by Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 122–23 (Tex. 2001), held that an independent adjusting firm cannot be liable to an insured for improper investigation and settlement advice regardless of whether the insured phrased his allegations as negligence, bad faith, breach of contract, tortious interference, or DTPA. *See Crocker v. Am. Nat'l Gen. Ins. Co.*, 211 S.W.3d 928, 937–38 (Tex. App.—Dallas 2007, no pet.); *Dagley v. Haag Eng'g Co.*, 18 S.W.3d 787, 790–93 (Houston [14th Dist.] 2000, no pet.) (also holding that an independent adjuster cannot be held liable under the Insurance Code in addition to negligence, bad faith, breach of contract, tortious interference, and DTPA claims). This reasoning is applicable to Southwest given its role of providing administrative services to Liberty and Dr. Stumhoffer without any independent contractual relationship with Carpenter. Accordingly, the trial court did not err in granting summary judgment in favor of Southwest. Appellant's sole issue is overruled.

*This Court's Ruling*

The judgment of the trial court is affirmed.

July 19, 2012                                                    TERRY McCALL

Panel consists of: Wright, C.J.,                   JUSTICE
McCall, J., and Kalenak, J.

7