MANSFIELD, Justice.
A worker was injured on the job when his vehicle was rear-ended. He filed a claim for benefits with the workers compensation commissioner. Later, he filed a bad-faith action in the district court against his employer's workers' compensation carrier and its third-party administrator. The action was removed to federal court.
The federal district court has asked us to answer the following certified question of Iowa law: "In what circumstances, if any, can an injured employee hold a third-party claims administrator liable for the tort of bad faith for failure to pay workers' compensation benefits?"
In Iowa, the bad-faith cause of action arises from (1) the special contractual relationship between insurer and insured, (2) the specific statutory and administrative duties imposed on insurers, or (3) some combination of the two. In workers' compensation, we have emphasized the statutory and administrative duties of workers' compensation carriers. As we discuss herein, a third-party administrator does not possess these attributes that have led to the imposition of bad-faith liability. Accordingly, we answer the question as follows: under Iowa law, a common law cause of action for bad-faith failure to pay workers' compensation benefits is not available against a third-party claims administrator of a worker's compensation insurance carrier.
I. Background Facts and Proceedings.
"When we answer a certified question, we rely upon the facts provided with the certified question," and therefore "restate the facts as set forth by the federal district court." Baldwin v. City of Estherville , 915 N.W.2d 259, 261 (Iowa 2018). The United States District Court for the *614 Northern District of Iowa described the facts as follows:
A. Factual Background
1. The parties
[Samuel] De Dios alleges that, at all material times, he has been a resident of Woodbury County, Iowa, and that he was employed by Brand Energy & Infrastructure Services. He alleges that Brand had a workers' compensation insurance policy with defendant Indemnity Insurance Company of North America, but that Indemnity "delegated its authority of investigating, handling, managing, administering, and paying benefits under Iowa Workers' Compensation Laws to [defendant] Broadspire Services, Incorporated." Amended Complaint, ¶ 4.
More specifically, De Dios alleges the following about Broadspire's duties and its relationship with Indemnity:
5. At all times material to the Petition, the INSURANCE COMPANY and BROADSPIRE were responsible for making timely payment of workers' compensation benefits to employees of the EMPLOYER, including SAMUEL. Plaintiff will refer to both the INSURANCE COMPANY and BROADSPIRE collectively as "the Defendants."
6. BROADSPIRE and the INSURANCE COMPANY are essentially one and the same entity for purposes of the instant action.
7. The INSURANCE COMPANY lacked the necessary support staff to investigate on-the-job injuries in Iowa, including SAMUEL's on-the-job injury.
8. The INSURANCE COMPANY lacked the necessary support staff that had the experience or knowledge to make an informed decision on whether to pay benefits pursuant to Iowa Workers' Compensation Laws.
9. The INSURANCE COMPANY obligated BROADSPIRE to provide actuarial services for workers' compensation claims, including SAMUEL's workers' compensation claim.
10. The INSURANCE COMPANY obligated BROADSPIRE to provide underwriting services for workers' compensation claims, including SAMUEL's workers' compensation claim.
11. BROADSPIRE performed the tasks of a workers' compensation insurance company in Iowa.
12. BROADSPIRE received a percentage of the premiums that the EMPLOYER paid to the INSURANCE COMPANY.
13. BROADSPIRE's compensation package with the INSURANCE COMPANY was tied to the approval or denial of workers' compensation claims: BROADSPIRE received more of the EMPLOYER's premium as the payment of workers' compensation benefits decreased.
14. BROADSPIRE had a financial risk of loss for workers' compensation claims it administered on behalf of the INSURANCE COMPANY, including SAMUEL's workers' compensation claim.
15. The INSURANCE COMPANY had a financial risk of loss for workers' compensation claims that were administered by BROADSPIRE, including SAMUEL's workers' compensation claim.
16. The INSURANCE COMPANY entered into a reinsurance agreement with BROADSPIRE for payments made on behalf of workers' compensation claims, including SAMUEL's workers' compensation claim.
Amended Complaint at ¶¶ 5-16.
2. The accident and aftermath *615 De Dios alleges that, on April 8, 2016, he was assigned by Brand to work on a construction site located on the private property of CF Industries. To enter the property, he had to drive past a security gate and a security guard. He alleges that, after [he] enter[ed] the property, a vehicle driven by Jonathan Elizondo crashed into the back of his vehicle, damaging his vehicle and causing him injuries, including a lower back injury. The collision was witnessed by the security guard at the gate, Tina Gregg. De Dios reported the collision and his work injury to Brand's safety manager, Ismael Barba. He alleges that Brand authorized him to choose whatever medical provider he would like to provide care for the work injury. De Dios chose to be treated at St. Luke's Hospital, where Dr. Jeffrey O'Tool provided him with medical care for his work injury.
On April 11, 2016, De Dios returned to work with Brand, but his back pain worsened. On April 14, 2016, Brand sent De Dios home because of his work injury. On April 14, 2016, Brand authorized De Dios to choose whatever medical provider he would like to see to care for his work injury. On April 15, 2016, De Dios's family doctor, Alisa M. Olson, DO, treated De Dios for the work injury. De Dios alleges that, from April 8, 2016, through May 9, 2016, Brand refused to provide him with "light duty" work. He alleges that, from April 15, 2016, Indemnity and Broadspire knew or should have known that he had work restrictions as a result of his work injury; that Brand refused to provide "light duty work" within those restrictions; and that Indemnity and Broadspire were required to pay him Temporary Total Disability ("TTD") Benefits and/or Healing Period ("HP") Benefits until a determination of maximum medical improvement was made by a qualified medical expert.
3. Denial of the claim
De Dios alleges that Broadspire or, in the alternative, Indemnity made the decision to deny him workers' compensation benefits. He alleges that, prior to doing so, neither Indemnity nor Broadspire interviewed him, or interviewed or contacted the security guard, Tina Gregg, who had witnessed the accident, or his treating physicians, Dr. O'Tool and Dr. Olson. He alleges that the defendants' failure to contact these people violated an insurance industry standard of "Three-Point Contact" before denying him workers' compensation benefits. On June 9, 2016, De Dios filed a workers' compensation claim with the Iowa Workers' Compensation Commissioner against Indemnity and Broadspire. On August 23, 2016, Indemnity and Broadspire filed a joint Answer with the Iowa Workers' Compensation Commissioner and denied liability for De Dios's work injury. De Dios alleges that Indemnity and Broadspire did not convey to him the basis for their decision to deny his claim at that time, that they, in fact, had no reasonable basis for denying his claim, and that they knew or should have known that no reasonable basis existed to deny his claim.
II. Standard of Review and Criteria for Answering a Certified Question.
Regarding this Court's power to answer certified questions of law, Iowa Code section 684A.1 provides,
The supreme court may answer questions of law certified to it by the supreme court of the United States, a court of appeals of the United States, a United States district court or the highest appellate court or the intermediate appellate court of another state, when requested by the certifying court, if there are involved in a proceeding before *616 it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the appellate courts of this state.
Iowa Code § 684A.1 (2018).
We have therefore held,
It is within our discretion to answer certified questions from a United States district court. We may answer a question certified to us when (1) a proper court certified the question, (2) the question involves a matter of Iowa law, (3) the question "may be determinative of the cause ... pending in the certifying court," and (4) it appears to the certifying court that there is no controlling Iowa precedent.
Baldwin , 915 N.W.2d at 265 (quoting Roth v. Evangelical Lutheran Good Samaritan Soc'y , 886 N.W.2d 601, 605 (Iowa 2016) (omission in original)).
In this case, the answer to the certified question will determine whether De Dios's claim against Broadspire can proceed, and it does not appear to us (nor did it appear to the federal district court) that there is any controlling Iowa precedent. We conclude we should answer the certified question.
III. Analysis.
In Dolan v. Aid Insurance Company , we first recognized the tort of first-party insurer bad faith. 431 N.W.2d 790, 790, 794 (Iowa 1988) (en banc). There, the plaintiff filed suit against his insurer, claiming bad-faith failure to settle for the underinsured motorist policy limit. Id. at 791. We found it was "appropriate to recognize the first-party bad faith tort to provide the insured an adequate remedy for an insurer's wrongful conduct" because traditional breach of contract damages would not always be adequate to compensate for bad faith and the alternative remedy of intentional infliction of emotional distress was inadequate due to its limited applicability. Id. at 794.
We also found that recognition of the tort was justified "by the nature of the contractual relationship between the insurer and insured." Id. We explained,
Although we do not believe this relationship involves the same fiduciary duties as in the third-party situations, ... we have frequently noted that insurance policies are contracts of adhesion. This is due to the inherently unequal bargaining power between the insurer and insured, which persists throughout the parties' relationship and becomes particularly acute when the insured sustains a physical injury or economic loss for which coverage is sought. Recognition of the first-party bad faith tort redresses this inequality.
Id. (citations omitted). We adopted the test for bad faith applied by the Wisconsin Supreme Court in Anderson v. Continental Insurance Company :
To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim.
Id. (quoting Anderson , 85 Wis.2d 675, 271 N.W.2d 368, 376 (1978) ). We ultimately reversed the district court's order denying the insurer's motion for summary judgment, finding as a matter of law that the insured had failed to show the lack of a reasonable basis for the insurer's actions under the Anderson test. Id. at 794-95.
Four years later, we decided that our holding in Dolan logically extended to workers' compensation. Boylan v. Am. Motorists Ins. , 489 N.W.2d 742, 744 (Iowa 1992). In Boylan v. American Motorists Insurance Company , we held that injured workers could pursue bad-faith claims *617 against workers' compensation carriers. Id. There, we reversed an order dismissing a bad-faith tort claim brought by an employee against his employer's workers' compensation carrier. Id. at 742, 744. The district court had found "the relationship between an injured employee and the employer's workers' compensation carrier" was unlike the insurer/insured relationship in which we had recognized tort liability for bad faith. Id. at 742. The district court relied on our reasoning in Long v. McAllister , which held,
The insurer has a fiduciary duty to the insured but an adversary relationship with the victim. The effect of the policy is to align the insurer's interests with those of the insured. In meeting its duty to the insured, the insurer must give as much consideration to the insured's interests as it does to its own.
Boylan , 489 N.W.2d at 743 (quoting Long , 319 N.W.2d 256, 262 (Iowa 1982) ). The district court had also observed that "an employer or workers' compensation insurance carrier is not required to pay weekly benefits or to pay medical service providers prior to the time the industrial commissioner has determined the employee's entitlement to benefits." Id.
We found, however, that Iowa statutes and the Iowa administrative code placed obligations on insurers. Id. We recognized that Iowa Code section 86.13 (1991) imposed "an affirmative obligation on the part of the employer and insurance carrier to act reasonably in regard to benefit payments ...." Id. We also noted section 85.27 established an "affirmative obligation to furnish medical and hospital supplies to an injured employee," and "although [this] statute speaks only of the obligation of the employer, the commissioner's regulations consign these obligations to the employer's insurance carrier." Id.[1] The regulations at issue were Iowa Admin. Code r. 876-2.3 and r. 876-4.10.[2] Id. Rule 876-2.3 states,
Representative within the state.All licensed insurers , foreign and domestic, insuring workers' compensation and all employers relieved from insurance pursuant to Iowa Code section 87.11 shall designate one or more persons geographically located within the borders of this state, which person or persons shall be knowledgeable of the Iowa Workers' Compensation Law and Rules and shall be given the authority and have the responsibility to expedite the handling of all matters within the scope of Iowa Code chapters 85, 85A, 85B, 86, and 87.
The Iowa workers' compensation commissioner shall be advised by letter of the name, address, and telephone number of each of the persons so designated. Any change in the identity, address or telephone number of the persons so designated shall be reported to the Iowa workers' compensation commissioner within ten days after such change occurs.
(Emphasis added). Rule 876-4.10 states,
Insurance carrier as a party. Whenever any insurance carrier shall issue a policy with a clause in substance providing that jurisdiction of the employer is jurisdiction of the insurance carrier, the insurance carrier shall be deemed a party in any action against the insured.
This rule is intended to implement Iowa Code section 87.10.[3 ]
(Emphasis added).
Under Boylan , the predominant justification for recognizing a bad-faith tort *618 against workers' compensation carriers was the existence of certain "affirmative obligations" placed upon them by our statutory and regulatory scheme. See 489 N.W.2d at 743 ; see also Joel E. Fenton, The Tort of Bad Faith in Iowa Workers' Compensation Law , 45 Drake L. Rev. 839, 847 (1997) ("This bundle of statutory and administrative obligations imposed on the insurance carrier creates a Dolan -like relationship between claimant and insurance carrier, which brings it into the circle of first-party relationships."). We also noted that the exclusive remedy defense found in Iowa Code section 85.20 (1991) was not available to insurance carriers.[4] See Boylan , 489 N.W.2d at 743-44 (citing Tallman v. Hanssen , 427 N.W.2d 868, 870 (Iowa 1988) ("This court ... recognized that the exclusive remedy provision of our workers' compensation act is applicable only to claims against the employer and does not extend to the employer's compensation insurer.")).
We extended the workers' compensation bad-faith tort in Reedy v. White Consolidated Industries, Incorporated , to include self-insured employers. 503 N.W.2d 601, 603 (Iowa 1993). We explained,
A self-insured employer under the Workers' Compensation Act is not an employer who fails to secure insurance against workers' compensation liability. Without more, an employer who fails to secure insurance against such claims merely waives the protection of the act against common-law claims. Iowa Code § 87.21 (1993). To be a qualified self-insured employer under the act, it is necessary to voluntarily assume a recognized status under the workers' compensation laws as an insurer. Iowa Code § 87.4 (1987). For purposes of a bad-faith tort claim, we see no distinction between a workers' compensation insurance carrier for an employer and an employer who voluntarily assumes self-insured status under the act.
Id.
Then in Bremer v. Wallace , we answered the following question in the negative: "Does Iowa recognize a common-law claim for bad-faith refusal to pay workers' compensation benefits by an uninsured employer?"
*619 728 N.W.2d 803, 804, 806 (Iowa 2007). Addressing Dolan , Boylan , and Reedy , we found,
The common thread in these decisions is the defendant's status as an insurer, or in the case of a self-insured employer, the substantial equivalent of an insurer. This status reflects and is consistent with the rationale underlying our decision in Dolan .
Id. at 805. We concluded that an uninsured employer is unlike an insurer or self-insured employer:
A self-insured employer must meet precise requirements to acquire that standing. Under section 87.4, [ (2001) ] "groups of employers by themselves or in an association with any or all of their workers, may form insurance associations," as provided in that statute "[f]or the purpose of complying with [chapter 87]." Iowa Code § 87.4. These "self-insured associations" must submit a plan to the insurance commissioner for approval. Id. Approval is conditioned on meeting rigorous financial requirements. See Iowa Admin Code. r. 191-56.3. Once a certificate of approval has been issued by the insurance commissioner, "the workers' compensation self-insurance association" is authorized "to provide workers' compensation benefits." Id. r. 191-56.8(1). Thereafter, the association is subject to the continuing supervision of the insurance commissioner. Id. rs. 191-56.9, 191-56.13.
Id. (second alteration in original). We continued,
The defendant in this case stands in a much different position. He did not purchase workers' compensation insurance or join a self-insurance association. Thus, he is not an insurer, nor is he the substantial equivalent of an insurer. Consequently, the actual issue in this case is whether bad-faith tort liability for failing to pay workers' compensation benefits should be imposed under circumstances that do not involve an insurer/insured relationship.
Id. at 806. We held that it should not be. Id.
To summarize, we extended bad-faith liability to workers compensation carriers because the law imposed certain affirmative obligations on both employers and insurance carriers, and the employer's exclusive remedy defense was not available to carriers. Boylan , 489 N.W.2d at 743-44. We then found that bad-faith liability could extend to a self-insured employer because the statutory requirements and administrative oversight exercised over self-insured employers rendered them the substantial equivalent of insurers. Reedy , 503 N.W.2d at 603. Thus, we characterized the key inquiry as whether an insurer/insured relationship existed between the plaintiff and defendant. Bremer , 728 N.W.2d at 806.
In other decisions, we have amplified these points. We have reemphasized the statutory basis within Iowa Code section 86.13 for the bad-faith claim based on delayed payment of benefits. See Gibson v. ITT Hartford Ins. , 621 N.W.2d 388, 397 (Iowa 2001) (en banc). We have explained that workers' compensation bad-faith claims are considered "first-party bad faith" claims because of their statutory and regulatory genesis. McIlravy v. N. River Ins. , 653 N.W.2d 323, 329 n.2 (Iowa 2002). As we put it, "[W]hen first adopting the bad faith cause of action in the workers' compensation context, we determined that such a suit is more accurately considered as one for first-party bad faith given 'the obligations that [ Iowa Code §§ 86.13, .27] [ (1999) ] and administrative regulations place on the insurer.' " Id. (first alteration in original) (quoting Boylan , 489 N.W.2d at 743 ).
We have also held that workers' compensation bad-faith claims are subject to the statute of limitations for "other actions,"
*620 not personal injury actions, because of their statutory grounding. See Brown v. Liberty Mut. Ins. , 513 N.W.2d 762, 764-65 (Iowa 1994). "Brown's bad-faith claim, as noted in Boylan , rests on Liberty Mutual's alleged breach of its statutory good-faith obligation to pay benefits in advance of a specific directive by the industrial commissioner." Id.
To sum up: "[O]ur decisions indicate it is the nature of the workers' compensation insurer's relationship with the insured employees and corresponding statutory duties that give rise to bad-faith tort liability." Thornton v. Am. Interstate Ins. , 897 N.W.2d 445, 463 (Iowa 2017). Thus, in Thornton , we reversed a finding that an insurer had opposed an employee's commutation petition in bad faith, noting, "Commutation is unlike the payment of weekly benefits in which the statute commands the employer (or insurer) to take action and, thus, establishes the type of statutory duty for which a willful and deliberate breach can give rise to bad-faith liability in the workers' compensation field." Id. at 469.[5]
When we consider these existing grounds for bad-faith liability in the workers' compensation field, it is difficult to see how they would apply to third-party administrators. A third-party administrator is not in an insurer/insured relationship with anyone. See Bremer , 728 N.W.2d at 806. And unlike a self-insured employer, a third-party administrator does not have to meet rigorous financial requirements and is not under the ongoing supervision of the workers' compensation commissioner. Id. at 805-06.
Our workers' compensation statutes also do not impose "affirmative obligations" on third-party administrators as they do on insurers. Cf. Boylan , 489 N.W.2d at 743. The Iowa workers' compensation law refers to third-party administrators, and thus confirms that the Iowa legislature was aware of their role. See Iowa Code § 85.65A(3)(e ) (2018) (providing that third-party administrators are not entitled to a commission for collecting the second injury fund surcharge); id. § 86.45(2)(e ), (h ) (allowing third-party administrators access to confidential information); id. § 87.11E(2)(c )-(e ), (f ) (making third-party administrators subject to penalties for filing false financial information). Yet this law imposes no obligations on them relative to the handling of workers' compensation claims. This shows that our legislature recognized a distinction between insurers and third-party administrators, and opted to impose "affirmative obligations" only on the former. See Boylan , 489 N.W.2d at 743. Our statutes do not define "insurer" as including third-party administrators. See Iowa Code chs. 85, 86, 87. In sum, under the laws of Iowa and the facts of this case, the third-party administrator is not an insurer, nor is it the substantial equivalent of an insurer.
It is true that the exclusive remedy provision in Iowa Code section 85.20 logically would not bar a claim against a third-party administrator, just as it does not bar a claim against a workers compensation carrier. See Boylan , 489 N.W.2d at 743-44. But that observation merely clears away a potential obstacle to such a claim; it does not provide an affirmative reason for recognizing such a claim when Iowa workers' compensation law does not impose any relevant statutory duties on third-party administrators.
De Dios raises the concern that the workers' compensation carrier could "completely *621 delegate its authority to a third-party administrator and that third-party administrator [could] arbitrarily deny coverage and delay payment of a claim to an injured worker with minimal consequences ...." Yet any insurer-not just a workers compensation carrier-can delegate its duties to a third party. This doesn't give the insurer a free pass for two reasons. First, if the third party is an agent, then vicarious liability applies. See Miller v. Hartford Fire Ins. , 251 Iowa 665, 672-73, 102 N.W.2d 368, 373 (1960) ("If an act done by an agent is within the apparent scope of the authority with which he has been clothed, it matters not that it is directly contrary to the instructions of the principal; the latter will, nevertheless, be liable, unless the third person with whom the agent dealt knew that he was exceeding his authority or violating his instructions." (quoting 2 Am. Jur. Agency § 348, at 271) (1936)). Second, the nondelegable duties imposed by Iowa statutes and administrative regulations remain on the carrier regardless of any attempt to pass them to a third party. As Couch on Insurance explains,
An insurer cannot delegate its duty of good faith. Therefore, an agent of the insurer, while acting on the insurer's behalf by carrying out the insurer's contractual obligations, is under the same duty of good faith as the insurer itself. Under varying circumstances, the good faith requirement has been held to also apply to attorneys of the insured.
This duty, however, only runs so far. While an insurer's agent may be subject to the insurer's duty of good faith, the agent does not also incur personal liability to the insured. The lack of contractual privity prevents courts from finding such liability, even in cases where the agent in question is a reinsuring subsidiary.
14 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 198:17, at 198-38 to 198-39 (3d ed. 2018 Update) (footnotes omitted).
Moving outside Iowa and relying on caselaw from other jurisdictions can be problematic because many jurisdictions-approximately half-do not recognize common law bad-faith claims against a workers' compensation carrier . See Steven Plitt, A Jurisprudential Survey of Bad Faith Claims in the Workers' Compensation Context , 18 Conn. Ins. L.J. 451, 452-457 (2012). Not surprisingly, these jurisdictions do not allow third parties to be sued for bad faith in the workers' compensation context, either. See, e.g. , Almada v. Wausau Bus. Ins. , 274 Conn. 449, 876 A.2d 535, 538-40 (2005) (holding a bad-faith action against a workers' compensation carrier's third-party administrator was foreclosed by an earlier ruling barring such an action against carriers themselves); Carpenter v. Sw. Med. Examination Servs., Inc. , 381 S.W.3d 583, 588 (Tex. App. 2012) (holding that a bad-faith claim against an administrative services firm was barred by Texas precedent disallowing bad-faith claims against workers' compensation carriers themselves).
De Dios asks us to follow the approach of Colorado, the only jurisdiction that to our knowledge has allowed bad-faith claims against third-party administrators or other entities retained by workers compensation carriers. In Scott Wetzel Services, Inc. v. Johnson , the Colorado Supreme Court held the bad-faith tort was available against independent claims adjusters. 821 P.2d 804, 811 (Colo. 1991). The court explained,
[A]n independent claims adjusting company ... acting on behalf of a self-insured employer owes a duty of good faith and fair dealing to an injured employee in investigating and processing a workers' compensation claim even in the *622 absence of contractual privity with the employee.
Id. at 813. Yet the court was very clear that this duty derived from Colorado's statutory and regulatory scheme governing workers' compensation:
The duty of good faith and fair dealing owed by insurers and self-insurers to workers' compensation claimants is rooted in the Act. The regulations promulgated under the Act specifically contemplate the use of claims administration services by self-insured employers as an important part of the scheme for delivery of workers' compensation benefits by self-insured employers. ... [The] ... regulations ... require that "[e]ach permit holder [i.e., self-insured employer] shall have within its own organization ample facilities and competent personnel to service its own program with respect to claims and administration or shall contract with a service company to provide the services ."
The self-insurer regulatory scheme therefore specifically envisions the use of independent claims administration services to provide benefits. ... The role of a claims adjusting service, therefore, derives not solely from its contract with the self-insured employer, but is based on statute and regulation as part of the benefit-delivery process.
Id. at 811-12 (second and third alteration in original) (emphasis in original) (citations omitted) (quoting 7 Colo. Code Regs. § 1101-4:3 (1990) ). The court further elaborated in a footnote:
For the purpose of our analysis it is not significant whether the claims adjusting service is an independent contractor or an agent of the employer. It is the statutory and regulatory structure and the adjuster's participation in the investigation and processing of claims that give rise to the duty and not the contract between the employer and claims adjusting service, or the law of principal and agent.
Id. at 812 n.10. Iowa does not have the same statutory and regulatory scheme.
In any event, Colorado is one of the relatively few jurisdictions that allow claims against third-party administrators generally, i.e., outside the workers compensation realm. See Farr v. Transamerica Occidental Life Ins. Co. of Cal. , 145 Ariz. 1, 699 P.2d 376, 385-86 (Ariz. Ct. App. 1984) (finding that an entity that collected premiums, handled claims according to the insurer's guidelines, and received a commission on premiums collected could be sued in bad faith notwithstanding a lack of privity with the insured); Cary v. United of Omaha Life Ins. , 68 P.3d 462, 469 (Colo. 2003) (en banc), as modified on denial of reh'g (May 19, 2003) ("When a third-party administrator performs many of the tasks of an insurance company and bears some of the financial risk of loss for the claim, the administrator has a duty of good faith and fair dealing to the insured ...."); Wathor v. Mut. Assur. Adm'rs, Inc. , 87 P.3d 559, 563 (Okla. 2004) ("In a situation where a plan administrator performs many of the tasks of an insurance company, has a compensation package that is contingent on the approval or denial of claims, and bears some of the financial risk of loss for the claims, the administrator has a duty of good faith and fair dealing to the insured."); Merriman v. Am. Guarantee & Liab. Ins. , 198 Wash.App. 594, 396 P.3d 351, 360 (2017) (finding that an independent claims administrator can be sued for bad faith because it is subject to the same relevant statutory duties as an insurer); but see Meineke v. GAB Bus. Servs., Inc. , 195 Ariz. 564, 991 P.2d 267, 270-71 (Ariz. Ct. App. 1999) ("Creating a separate duty from the adjuster to the insured would thrust the adjuster into what could be an irreconcilable conflict between such duty and the adjuster's *623 contractual duty to follow the instructions of its client, the insurer."); Riccatone v. Colo. Choice Health Plans , 315 P.3d 203, 207 (Colo. App. 2013) ("[A]bsent a financial incentive to deny an insured's claims or coerce a reduced settlement, a third party that investigates and processes an insurance claim does not owe a duty of good faith and fair dealing to the insured."); Trinity Baptist Church v. Bhd. Mut. Ins. , 341 P.3d 75, 81 (Okla. 2014) ("[T]his Court will only apply the duty of good faith and fair dealing to a third party stranger to the insurance contract when the third party acts so like an insurer that it develops a special relationship with the insured ....").
Iowa has not taken that step. And most jurisdictions to have considered the issue have declined to recognize bad-faith claims against third-party administrators and other entities that are not in privity with the insured. See Lodholtz v. York Risk Servs. Grp., Inc. , 778 F.3d 635, 640-41, 641 n.11 (7th Cir. 2015) (finding that Indiana law does not impose a duty running from a claims adjuster to an insured and that this is "the rule adopted by the majority of American jurisdictions"); The William Powell Co. v. Nat'l Indem. Co. , 141 F. Supp. 3d 773, 782-83 (S.D. Ohio 2015) ("Ohio law most strongly points to the conclusion that, absent privity, an insured may not sue a third-party claims administrator for adjusting its claim in bad faith."); McLaren v. AIG Domestic Claims, Inc. , 853 F. Supp. 2d 499, 511 (E.D. Pa. 2012) (noting that Pennsylvania does not allow bad-faith claims against third-party administrators); Simmons v. Cong. Life Ins. , 791 So.2d 360, 365-66 (Ala. Civ. App. 1998) (affirming summary judgment in favor of a third-party administrator on a bad-faith claim based on lack of privity), aff'd in part, vacated in part, rev'd in part on other grounds , Ex Parte Simmons , 791 So.2d 371 (Ala. 2000) ; Sanchez v. Lindsey Morden Claims Servs., Inc. , 72 Cal.App.4th 249, 84 Cal.Rptr.2d 799, 803 (1999) ("Our decision is consistent with the majority of cases in other states, which hold that an independent adjuster hired by the insurer owes no duty of care to the insured."); Charleston Dry Cleaners & Laundry, Inc. v. Zurich Am. Ins. , 355 S.C. 614, 586 S.E.2d 586, 588 (S.C. 2003) (holding that "no bad faith claim can be brought against an independent adjuster or independent adjusting company" due to the lack of privity); Natividad v. Alexsis, Inc. , 875 S.W.2d 695, 697-98 (Tex. 1994) (finding that a claims adjustment firm could not be sued in bad faith by the injured employee because it was not part of the special relationship among the employee, the employer, and the insurer); Carpenter , 381 S.W.3d at 588-89 (summarizing Texas authority that forecloses actions against adjusting and administrative services firms for bad faith because of a lack of privity); Hamill v. Pawtucket Mut. Ins. , 179 Vt. 250, 892 A.2d 226, 230 (2005) ("We concur with the majority view that public policy considerations do not favor creating a separate duty on the part of independent adjusters that would subject them to common-law tort actions by insureds who have suffered economic loss as the result of allegedly mishandled claims.").
Various policy reasons have been given for this majority rule. "An adjuster owes a duty to the insurer who engaged him. A new duty to the insured would conflict with that duty and interfere with its faithful performance. This is poor policy." Sanchez , 84 Cal.Rptr.2d at 802. Also, "in most cases this [new duty] would be redundant, since the insurer also would be liable for unreasonable investigation or claims handling." Id. We have already noted this latter point.
In the workers compensation field, our precedent holding the compensation *624 carrier to a duty of good faith and fair dealing vis-à-vis the injured worker rests upon statutes and regulations directed specifically at the carrier. See Thornton , 897 N.W.2d at 463 ; McIlravy , 653 N.W.2d at 329 n.2 ; Gibson , 621 N.W.2d at 397 ; Brown , 513 N.W.2d at 764-65 ; Boylan , 489 N.W.2d at 743. These statutes and regulations do not apply to third-party administrators. Thus, if we were going to begin recognizing bad-faith claims against insurance intermediaries, as opposed to insurers themselves, workers compensation would be an unusual place to start.
De Dios asks us to follow the Colorado approach. That is, he urges us to hold that when a third-party administrator "acts sufficiently like an insurer," that administrator can be sued for bad faith as if it were an insurer. But this area of law already has a workable bright line in our view-a line established by the legislature. Iowa Code sections 87.1, 87.4, and 87.11 delineate the entities that act as insurers under our workers compensation system.[6]
IV. Conclusion.
For the foregoing reasons, we have answered the certified question as stated above. We therefore return the case to the United States District Court for the Northern District of Iowa for further proceedings consistent with this opinion.
CERTIFIED QUESTION ANSWERED.
All justices concur except Appel and Wiggins, JJ., who dissent.

Notably, the present version of Iowa Code section 85.27 more expressly places obligations on the carrier as well as the employer. See Iowa Code § 85.27(3) (2018).

Cited as 343 Iowa Admin. Code 2.3, 4.10.

Iowa Code section 87.10 states,
Other policy requirements.
Every policy issued by an insurance corporation, association, or organization to insure the payment of compensation shall contain a clause providing that between any employer and the insurer, notice to and knowledge of the occurrence of injury or death on the part of the insured shall be notice and knowledge on the part of the insurer; and jurisdiction of the insured shall be jurisdiction of the insurer, and the insurer shall be bound by every agreement, adjudication, award or judgment rendered against the insured.
Iowa Code § 87.10 (2018).

Iowa Code section 85.20 currently reads as follows:
85.20 Rights of employee exclusive.
The rights and remedies provided in this chapter, chapter 85A, or chapter 85B for an employee, or a student participating in a work-based learning opportunity as provided in section 85.61, on account of injury, occupational disease, or occupational hearing loss for which benefits under this chapter, chapter 85A, or chapter 85B are recoverable, shall be the exclusive and only rights and remedies of the employee or student, the employee's or student's personal or legal representatives, dependents, or next of kin, at common law or otherwise, on account of such injury, occupational disease, or occupational hearing loss against any of the following:
1. Against the employee's employer.
2. Against any other employee of such employer, provided that such injury, occupational disease, or occupational hearing loss arises out of and in the course of such employment and is not caused by the other employee's gross negligence amounting to such lack of care as to amount to wanton neglect for the safety of another.
Iowa Code § 85.20(1), (2) (2018).

While making this observation, we elected "to decide this case based on the factual record presented, without foreclosing the possibility that a bad-faith claim may arise for resisting commutation under different facts." Thornton , 897 N.W.2d at 468.

Citing to Bremer , De Dios argues that any entity that is "the substantial equivalent of an insurer" should be liable in bad faith. See Bremer , 728 N.W.2d at 805. But this language needs to be read in context. Bremer was making the point that under the workers compensation law , a self-insured employer is the substantial equivalent of an insurer in terms of its statutory and regulatory duties. See id. That is not true of a third-party administrator.