Filed 02/26/24

VERMONT SUPERIOR COURT
CHITTENDEN UNIT
CIVIL DIVISION

ANDREW LEISE,
 Plaintiff

 v.

CORVEL ENTERPRISE COMP., INC.,
 Defendant

Docket No. 23-CV-3775

## RULING ON DEFENDANT'S MOTION TO DISMISS

Plaintiff Andrew Leise brings this claim for insurance bad faith against CorVel Enterprise Company, Inc., a workers' compensation claims administrator for the State of Vermont. CorVel moves to dismiss, arguing that there is no cause of action for bad faith against an insurer's agent or third-party contractor, and that Plaintiff has failed to exhaust administrative remedies.

### Alleged Facts

The following facts are alleged in the complaint. The court makes no finding as to their accuracy.

On June 23, 2021, Plaintiff sustained a work-related injury while employed as a Vermont state trooper and submitted a workers' compensation claim. Defendant CorVel handled his claim on behalf of the State of Vermont, and at all relevant times acted as the authorized workers' compensation claims administrator for the State. Attorney Wesley M. Lawrence represented the State in Plaintiff's claim, and acted at the direction of CorVel in defending against Plaintiff's claim.

On October 10, 2022, the parties reached a settlement of Plaintiff's worker's compensation claim for $79,750. Attorney Lawrence confirmed the settlement by email: "We have a deal at $79,750.00 for a Form 16 (full and final/WC claims to date of approval). I will have proposed settlement documents to you soon." Compl. ¶ 6.

At that time, Plaintiff was pursuing (and continues to pursue) a civil action against the Vermont Human Rights Commission (VHRC), its board chair, and executive director for alleged civil rights violations and other related claims in federal court. *See* Leise v. Vermont Human Rights Commission, et al., Docket No. 2:22-cv-9. The district court granted the Commission's motion to dismiss on immunity grounds on March 24, 2023, and that ruling is currently on appeal before the Second Circuit.

Plaintiff has not been paid his settlement because CorVel has refused to agree to the language of a release that unequivocally preserves Plaintiff's right to pursue the VHRC suit. This, Plaintiff alleges, constitutes bad faith in violation of the covenant of good faith and fair dealing. He alleges that CorVel "refused to approve draft after draft of proposed release language that would have released any and all workers' compensation obligations to fully protect the employer without prejudice to plaintiff's ability to pursue the VHRC Suit" and that this "bad faith conduct was part of a scheme intended to leverage the nonpayment of his workers' compensation settlement to economically intimidate him and force him to compromise the VHRC Suit." Compl. ¶¶ 10–11.

## Discussion

CorVel argues that Vermont recognizes no cause of action for bad faith against an insurer's agent or third-party contractor. Alternatively, it contends that Plaintiff has failed to exhaust administrative remedies available under the Workers' Compensation Act.

2

### 1. Exhaustion of Administrative Remedies

CorVel contends that the worker's compensation statute provides an administrative remedy that Plaintiff should have pursued before taking his bad faith claim to court. However, this court already expressly rejected that argument in <u>Garcia v. Farm Family Ins. Co.</u>, No. 465-5-15 Cncv, 2019 WL 13172491, at *3 n.2 (Vt. Super. Ct. Aug. 28, 2019) (Ruling on Motion for Summ. J.). CorVel makes no effort to distinguish <u>Garcia</u> in this respect.

### 2. Bad Faith Against Non-Insurer

CorVel also argues that bad faith claims require an insurer-insured relationship, and that Vermont therefore recognizes no bad faith cause of action against a third party claims administrator. *See* <u>Peerless Ins. Co. v. Frederick</u>, 2004 VT 126, ¶ 15, 177 Vt. 441 ("Whether the claim is for tortious or contractual bad faith, an insured/insurer relationship is still a prerequisite to sustain the claim."). Plaintiff contends that this court's rulings in <u>Garcia</u> are dispositive of CorVel's argument. *See* <u>Garcia</u>, *supra*, 2019 WL 13172491 (Aug. 28, 2019) (Ruling on Motion for Summ. J.); <u>Garcia</u>, slip copy, (Feb. 4, 2016) (Ruling on Motion to Dismiss).

In <u>Garcia</u>, the plaintiff sued her former employer's workers' compensation carrier for bad faith. The insurer argued that Vermont did not recognize an employee's right to sue her employer's workers' compensation carrier for bad faith because there was no insurance contract between the employee and the insurer. This court rejected that argument, noting that because employees are the intended beneficiaries of workers' compensation policies, they have a cause of action against the insurer for bad faith. <u>Garcia</u>, slip copy at 3–4, (Feb. 4, 2016) (Ruling on Mot. to Dismiss); <u>Garcia</u>, 2019 WL 13172491, at *2 (Aug. 28, 2019) (Ruling on Mot. for Summ. J.) (citing <u>Marsigli's Estate v.</u>

3

Granite City Auto Sales, Inc., 124 Vt. 95, 106 (1964); 21 V.S.A. § 693; Racine v. Am. Int'l Adjustment Co., 980 F. Supp. 745, 746 (D. Vt. 1997). Indeed, the statute makes this explicit. 21 V.S.A. § 693 (providing that every workers' compensation policy "shall contain a provision setting forth the right of the employees to enforce, in their own names, the liability of the insurance carrier . . . for the payment of such compensation, either by filing a separate claim at any time or by making at any time the insurance carrier a party to the original claim").

The issue in Garcia was whether the plaintiff could sue her employer's workers' compensation *insurer* despite not having a direct contractual relationship with the insurer. The issue here is different: whether Plaintiff can sue a third-party administrator rather than an insurer. Garcia does not resolve the precise question here, and there appears to be no Vermont law that does so directly. CorVel relies primarily on De Dios v. Indem. Ins. Co. of N. Am., 927 N.W.2d 611, 620 (Iowa 2019), amended (May 14, 2019), where the Iowa Supreme Court held that workers' compensation claimants cannot pursue bad faith actions against third-party administrators even though such claims are available against insurers. The De Dios court reasoned that a third-party administrator "is not in an insurer/insured relationship with anyone" and "does not have to meet rigorous financial requirements and is not under the ongoing supervision of the workers' compensation commissioner." Id.

While there is a split of authority, the De Dios approach represents the majority position. "[M]ost jurisdictions to have considered the issue have declined to recognize bad-faith claims against third-party administrators and other entities that are not in privity with the insured." De Dios, 927 N.W.2d at 623 (collecting cases). Those cases have expressed various policy reasons for this majority rule: "An adjuster owes a duty to the

4

insurer who engaged him. A new duty to the insured would conflict with that duty and interfere with its faithful performance"; and "in most cases this new duty would be redundant, since the insurer also would be liable for unreasonable investigation or claims handling." Id. (quotations omitted) (brackets omitted); *see also* 14 Couch on Ins. § 198:17 ("While an insurer's agent may be subject to the insurer's duty of good faith, the agent does not also incur personal liability to the insured. The lack of contractual privity prevents courts from finding liability even in cases where the agent in question is a reinsuring subsidiary."); Lodholtz v. York Risk Servs. Grp., Inc., 778 F.3d 635, 640 (7th Cir. 2015) (under Indiana law, "a claims adjuster does not owe a duty of care to the insured"); Sanchez v. Lindsey Morden Claims Servs., Inc., 84 Cal. Rptr. 2d 799, 803 (Cal. Ct. App. 1999) ("California courts have refused to extend liability for *bad faith,* the predominant insurer tort, to agents and employees of the insurer) (emphasis in original); Charleston Dry Cleaners & Laundry, Inc. v. Zurich Am. Ins. Co., 586 S.E.2d 586, 588 (S.C. 2003) ("no bad faith claim can be brought against an independent adjuster or independent adjusting company").

However, there are also good arguments on the other side of this issue. Perhaps the leading case in support of the minority approach is Scott Wetzel Servs., Inc. v. Johnson, 821 P.2d 804 (Colo. 1991). There, the Colorado Supreme Court held that "an independent claims adjusting company . . . acting on behalf of a self-insured employer owes a duty of good faith . . . to an injured employee in investigating and processing a workers' compensation claim even in the absence of contractual privity with the employee." Id. at 813. The court reasoned that Colorado's "self-insurer regulatory scheme . . . specifically envisions the use of independent claims administration services to provide benefits" and that, because of the structure of the state's Workers' Compensation Act, the

claims adjuster "was aware that it was instrumental in carrying out Safeway's duties to workers' compensation claimants." Id. at 812. The court further explained that its conclusion served the purposes behind the workers' compensation system, including the "humanitarian purpose of assisting injured workers and their families, by giving them a reliable source of compensation," and to provide "a method whereby claims arising out of employment-related accidents may be speedily resolved." Id. (citations omitted). "In the absence of an obligation to deal in good faith and fairly, self-insured employers and claims adjusting services may create obstacles to payment. This kind of delaying tactic runs counter to the goals of workers' compensation." Id.

The Colorado regulation at issue in Wetzel specifically referenced third party administrators that contract with self-insurers. *See* 7 Colo. Code Regs. § 1101-4:3 ("Each permit holder shall have within its own organization ample facilities and competent personnel to service its own program with respect to claims and administration *or shall contract with a service company competent to provide these services*.") (emphasis added). Notably, a Vermont regulation seems to contemplate that plaintiffs can sue third party administrators directly. *See* Vt. Admin. Code 4-3-64:17 (stating that the Insurance Commissioner may penalize a third party administrator if the administrator "has, without just cause, caused covered individuals to accept less than the amount due them or caused covered individuals to employ attorneys or bring suit against the TPA or a payor which it represents to secure full payment or settlement of such claims").

Colorado is not alone in following the minority approach. Plaintiff cites several out-of-state cases where courts have permitted bad faith claims against third party administrators, with varying degrees of persuasiveness. *See*, *e.g.*, Ferrari v. Helmsman Mgmt. Servs., LLC, No. CV N17C-04-270 MMJ, 2020 WL 3444106, at *4–5 (Del. Super.

Ct. June 23, 2020) (stating, with little analysis, that a plaintiff can sue a third party administrator directly for bad faith handling of workers' compensation claim because administrator's duty is coextensive with insurers' under general agency law); Falline v. GNLV Corp., 823 P.2d 888, 890–94 (Nev. 1991) (explaining that there was no rational basis to treat self-insured companies or their third party administrators differently from insurance carriers as to bad faith actions, and that the legislative scheme for sanctioning self-insured employers was not an exclusive remedy); Aslakson v. Gallagher Bassett Servs., Inc., 729 N.W.2d 712, 726–27 (Wis. 2007) (holding that language of Workers' Compensation Act did not explicitly bar plaintiff's bad faith claim against third-party administrator, and that allowing such a claim comports with public policy and purposes of Act).

The most potent defense of the minority approach comes from the De Dios dissent. In that dissent, Justice Appel raised numerous points that support his conclusion that an insurance intermediary should be held liable for bad faith when it acts as the "functional equivalent" of an insurer. De Dios, 927 N.W.2d at 632–33. He noted that the idea of privity between an employee and the employer's workers' compensation carrier has "always been a legal fiction," and that what really matters in a bad faith claim is the "functional relationships that arise from insurance relationships, not privity of contract." Id. at 632. He recognized the perverse incentives that can arise from the use of insurance intermediaries. Id. at 633. He further decried the "increased bureaucratization and compartmentalization of business practices" that have become a feature of 21st century life, and that,

> if accepted as legal barriers, tend to prevent direct accountability for wrongful conduct. Layers upon layers of bureaucracy impair responsiveness. In the workers'

7

> compensation arena, the employer hires an insurer and now the insurer in turn may hire a third-party administrator.
>
> But where there is no direct accountability, service may deteriorate. We all know the potential scenario. The phone rings and no one answers. One is put on hold for hours. The right hand knows not what the left hand is doing. No one is familiar with the file. A person with decision-making authority cannot be found. Delay. Delay. Delay. This type of behavior could lead to bad-faith exposure of an insurance company. The exact same type of behavior should lead to bad-faith exposure when a third-party administrator assumes the functions of the insurer.

Id. at 635; *see also* Jeffrey W. Stempel, The "Other" Intermediaries: The Increasingly Anachronistic Immunity of Managing General Agents and Independent Claims Adjusters, 15 Conn. Ins. L.J. 599, 603 (2009) ("Today, [] the greater near-autonomous role now shouldered by [managing general agents], TPAs[,] and independent adjusters demands that they be treated under the law on a par with the insurers they represent.").

Notwithstanding the persuasive points made by the De Dios dissent, two Vermont cases that arose in the homeowners' insurance context—while not precisely on point—strongly suggest that our Supreme Court would follow the majority approach. *See* Hamill v. Pawtucket Mut. Ins. Co., 2005 VT 133, ¶ 12, 179 Vt. 250; Murphy v. Patriot Ins. Co., 2014 VT 96, ¶ 19 n.4, 197 Vt. 438. In Hamill, the insured sued the insurer's independent adjusters for negligence to recover for mold growth as a result of allegedly negligent mishandling of his claim for water damage. The Court held that the adjusters owed no duty in negligence to the insured because the insured sought damages for purely economic loss recoverable under contract law against the insurer. Hamill, 2005 VT 133, ¶¶ 9–14. Moreover, subjecting adjusters to potential tort liability could create conflicting loyalties, and adjusters could face potentially open-ended liability. Id. ¶¶ 15–16. The Court

also rejected the insured's argument that Vermont statutes imposed a duty of care upon independent insurance adjusters as to insured policyholders. Id. ¶¶ 17–19.

In Murphy, the insured brought claims for negligence and bad faith against her homeowners' insurer. The Court affirmed the trial court's grant of summary judgment for the insurer. It held that, as to the negligence claim, the insurer did not have a duty to handle the insured's claims in a reasonable manner. Hamill, 2005 VT 133, ¶¶ 10–16. As to the bad faith claim, it held that neither inconsistencies between the adjuster's report and deposition nor the insurer's disagreement with the adjuster's conclusion supported a bad faith claim. Id. ¶¶ 17–25. The Court also noted in a footnote:

> Neither party has addressed whether the good or bad faith of the adjuster, who was not an employee of defendant, can be imputed to Patriot for purposes of a bad faith claim. We held in Hamill that "insureds may seek redress for such injuries through . . . bad-faith actions against their insurers." 2005 VT 133, ¶ 14. We assume from that statement that Patriot would be liable for damages caused by the bad faith of the adjuster even though Patriot did not act in bad faith independently of the adjuster.

Id. ¶ 19 n.4.

Notably, neither Hamill nor Murphy involved a *bad faith* claim brought against an insurer's *adjuster or other third party administrator*. Hamill involved a negligence claim brought against the adjuster, while Murphy involved a bad faith claim brought against the insurer. However, the rationale for not subjecting independent adjusters to an additional tort duty toward the insured echoes the rationale from De Dios. Moreover, the Court strongly suggested that the adjuster's bad faith would be imputed to the insurer, and that the insured's remedy would be a bad faith action against the insurer. Indeed, the Court's language in Hamill would seem to foreclose such an action against the intermediary:

9

> We concur with the majority view that public policy considerations do not favor creating a separate duty on the part of independent adjusters that would subject them to common-law tort actions by insureds who have suffered economic loss as the result of allegedly mishandled claims. As noted, insureds may seek redress for such injuries through breach-of-contract and bad-faith actions against their insurers.

Hamill, 2005 VT 133, ¶ 14. Notably, the Iowa Supreme Court cited Hamill—along with many other cases—to support its proposition that "most jurisdictions to have considered the issue have declined to recognize bad-faith claims against third-party administrators and other entities that are not in privity with the insured." De Dios, 927 N.W.2d at 623. Given our Supreme Court's decisions in Hamill and Murphy, this court must grant the motion to dismiss.

Order

Defendant's motion to dismiss is granted.

Electronically signed on February 25, 2024 pursuant to V.R.E.F. 9(d).

Helen M. Toor
Superior Court Judge

10